449 So.2d 471 (1984)
Ramon A. AIZPURUA, et ux.
v.
CRANE POOL COMPANY, INC., et al.
No. 83-C-2260.
Supreme Court of Louisiana.
April 2, 1984.
William D. Grimley, Baton Rouge, for applicants.
Guy A. Modica, Susan Dowden, Guy A. Modica, Ltd., Baton Rouge, for respondents.
WATSON, Justice.
Plaintiffs, Dr. and Mrs. Aizpurua, filed this suit on May 29, 1981, to recover for defects in a swimming pool which they purchased in conjunction with a residence on December 6, 1977. Named as defendants were: Edward M. and Anna Lee Smith, the vendors of the house and pool; Crane Pool Company, Inc., and/or Cory Crane, who constructed and manufactured the pool; and Watts Brothers Buildings, Inc., which developed the lot where the residence and pool are located. The trial court sustained exceptions of no cause of action, no right of action and prescription as to the Crane defendants. The Court of Appeal affirmed. Aizpurua v. Crane Pool Company, Inc., 439 So.2d 572 (La.App. 1 Cir.1983). A writ was granted to review the judgment. 443 So.2d 591 (La., 1983).
*472 The trial court concluded that any claims in redhibition or tort had prescribed. Because there was no privity of contract between plaintiffs and the Crane defendants, exceptions of no cause of action and no right of action were also sustained.
At the hearing on the exceptions, photographs were introduced in evidence which showed that the pool was in very poor condition prior to its repair. Problems with the pool were first apparent in December of 1979 and became progressively worse. Crane Pool Company was contacted in February of 1980 when the liner of the pool had separated from the cement wall and started to rip. Subsequently, cracks appeared in the coping of the pool.
An employee of Soil Testing Engineers testified as an expert from his company's records that the Aizpuruas' problems with the pool resulted from a six inch differential in settlement of the soil under the pool. The compressible soil materials which caused the pool problem were below the depth of the test borings.[1] In this expert's opinion, the condition began developing shortly after the pool was built in 1976 and continued, probably at a decreasing rate. If there had been appropriate testing prior to construction, the pool could have been placed on pilings "going down to a competent soil" or the incompetent soil could have been removed and replaced with a different material. (Tr. 70) The feasibility of both of these courses of action was open to serious question.
The trial court correctly found that any actions in tort and redhibition against Crane had prescribed. LSA-C.C. arts. 2546 and 3536.[2] The question remaining is whether plaintiffs have a right of action against Crane for breach of any implied or express warranty in the Crane building contract with the Smiths.
Plaintiffs rely on Media Pro. Consult., Inc. v. Mercedes-Benz of N.A., Inc., 262 La. 80, 262 So.2d 377 (1972), which allowed a consumer without privity to recover against the distributor of an automobile for latent defects under the implied warranty of fitness inherent in every sale. In Media, an American automobile distributor was found to occupy the position of the foreign manufacturer.
Liability of a contractor to the owner or other contracting party is governed by a ten year prescriptive period. LSA-C.C. art. 3500.[3] The Smiths, vendors of the house and pool, warranted to the Aizpuruas, the vendees, that the things sold were free of hidden defects. LSA-C.C. art. 2476.[4] The Aizpuruas were subrogated to the Smiths' rights and actions in warranty against "all others". LSA-C.C. art. 2503.[5] This article has been interpreted *473 as including only actions against other vendors. See LeBlanc v. Ellerbee Builders, Inc., 317 So.2d 1 (La.App. 1 Cir.1975). This reading of the article erroneously qualifies its literal language. "[T]he right to sue for breach of warranty of quality is transmitted with the object of the sale." XIV Tul.L.Rev. at p. 471. The implied warranty of materials and workmanship in a building contract is one to which a subsequent purchaser is subrogated. Media, supra. Despite lack of privity, one who acquires immovable property can enforce a contract made for the improvement of the property by the person from whom he acquired it. LSA-C.C. art. 2011;[6]Breaux v. Laird, 223 La. 446, 65 So.2d 907 (1953).
For the foregoing reasons, the judgment is affirmed insofar as it sustained the Crane defendants' exceptions of prescription. Insofar as the judgment held that plaintiffs had no cause of action and no right of action against the Crane defendants, the judgment is reversed, and the matter is remanded for further proceedings.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
DIXON, C.J., concurs.
DENNIS, J., concurs with reasons.
MARCUS, J., dissents and assigns reasons.
BLANCHE, J., dissents and will assign reasons.
LEMMON, J., concurs, believing that the contract between defendant and Smith was a building contract, but that plaintiffs have a right of action to enforce defendant's obligation imposed by La.C.C. Art. 2762.
MARCUS, Justice (dissenting).
The majority opinion holds that La.Civ. Code art. 2503 subrogates a purchaser to his seller's rights and actions against a building contractor for breach of the implied warranty of workmanship in a building contract. Chapter 6 of Book III, Title VII of the Civil Code is divided into three sections corresponding to the three principal obligations of the seller: tradition or delivery of the thing sold, warranty against eviction and warranty against redhibitory vices. Article 2503 is located in section two, entitled "Of the Warranty in Case of Eviction From the Thing Sold," and deals exclusively with the warranty against eviction. Because plaintiff has failed to allege that either his seller or the pool contractor breached the warranty against eviction, art. 2503 is inapplicable. Accordingly, I respectfully dissent.
DENNIS, Justice, concurring.
I respectfully concur.
Since the instant case is clearly covered by the second example described by Civil Code Article 2011, I do not feel there is any necessity to construct an analogy upon the Media case.
Further, I interpret the majority opinion to hold that, although plaintiffs' causes of action in tort and redhibition have prescribed, their cause of action based on the construction contract is governed by a ten year period and therefore has not prescribed.
BLANCHE, J. (dissenting).
The majority opinion broadly interprets C.C. art. 2503 to allow a vendor of a house to subrogate to the vendee the vendor's actions in warranty against any contractor who may have worked on the home or its immediate concomitants. By so doing, any notion of privity of contract which remained after Media Production Consultants, Inc. v. Mercedes-Benz of North America, Inc., 262 La. 80, 262 So.2d 377 (1972), has been dispelled.
Regardless of the merits of disposing of the theory of privity of contract, the codal authority cited by the majority to do so is inapposite. Art. 2503 is located in the civil code under the section entitled: "Of the Warranty in Case of Eviction From the *474 Thing Sold." Article 2500 states that eviction is the loss suffered by the buyer of the thing sold, occasioned by the right or claim of a third person. Thus, the warranty to which a vendee becomes subrogated under Article 2503 is simply the vendor's own warranty from eviction owed to him by previous vendors. LeBlanc v. Ellerbee Builders, Inc., 317 So.2d 1 (La.App. 1st Cir. 1975). Article 2503 was ever intended to provide subrogation to claims of defective workmanship or implied warranties of fitness. Had it been, the article would have been placed in the section of the code dealing with the vices of the thing sold, Art. 2520, et seq.
Finding no basis in the civil code for the type of subrogation created by the majority opinion, I therefore respectfully dissent.
NOTES
[1] It appears that the problem resulted from an inherent vice existing in the soil rather than any defect in fill or construction. An undertaker is liable for the loss resulting from a structure falling into ruin when he should have known of a latent defect in the soil. Wurst v. Pruyn, 250 La. 1109, 202 So.2d 268 (1967). Unless Crane knew or should have known of the defect or warranted that the soil was suitable for pool construction, plaintiffs could not recover for such a latent defect. An owner who sues a builder for defects in a swimming pool constructed under a building contract has the burden of showing that the defects were due to badness of workmanship or material rather than any latent defect of the soil. Unverzagt v. Young Builders, Inc., 207 So.2d 405 (La.App. 3 Cir.1968), affirmed 252 La. 1091, 215 So.2d 823 (1968).
[2] Former LSA-C.C. art. 3536 was vacated by Act No. 173 of the 1983 Regular Legislative Session effective January 1, 1984. See, now, LSA-C.C. art. 3492. The reenactment did not change the law.
[3] LSA-C.C. art. 3500 provides:

"An action against a contractor or an architect on account of defects of construction, renovation, or repair of buildings and other works is subject to a liberative prescription of ten years. Acts 1983, No. 173, § 1, eff. Jan. 1, 1984.
Comments
"(a) This Article is based on Article 3545 of the Louisiana Civil Code of 1870. It broadens the scope of the source article by adding the phrases `renovation, or repair' and `other works' and by suppressing the phrase `of brick or stone'. It does not change the law because an action against a contractor or an architect on account of defects of construction, renovation, or repair of buildings or other works is a personal action subject to a liberative prescription of ten years."
[4] LSA-C.C. art. 2476 provides:

"The warranty respecting the seller has two objects; the first is the buyer's peaceable possession of the thing sold, and the second is the hidden defects of the thing sold or its redhibitory vices."
[5] LSA-C.C. art. 2503 provides:

"The parties may, by particular agreement, add to the obligation of warranty, which results of right from the sale, or diminish its effect; they may even agree that the seller shall not be subject to any warranty.
"But whether warranty be excluded or not the buyer shall become subrogated to the seller's rights and actions in warranty against all others."
[6] LSA-C.C. art. 2011 provides:

"Not only the obligation, but the right resulting from a contract relative to immovable property, passes with the property. Thus the right of servitude in favor of immovable property, passes with it, and thus also the heir or other acquirer will have the right to enforce a contract made for the improvement of the property by the person from whom he acquired it."