CURRAULT, Judge.
This appeal arises from a judgment on an exception of no right of action granted to defendant, Marine Concrete Structures, Inc. (Marine), dismissing suit filed by plaintiffs, Gulf Oil Corporation (Gulf), Mid-Louisiana Gas Company (Mid-Louisiana) and Grand Bay Company (Grand Bay).
Gulf, Mobil Oil Corporation (Mobil), Pennzoil Offshore Gas Operators, Inc. (POGO), and Pennzoil Louisiana & Texas Offshore, Inc. (PLATO) are the joint owners of an oil and gas lease covering water-bottoms located in the area designated as Main Pass Block 140. Oil and natural gas from that lease are piped to the Grand Bay Receiving Station where the natural gas can be separated and placed into pipelines. Gulf retained its share of the natural gas produced, Mobil contracted to sell its gas to plaintiff, Mid-Louisiana, who then in turn contracted to sell a portion of that gas to Southern Natural Gas Pipeline Company (Southern), and POGO and PLATO contracted to sell their share of the gas to United Gas Pipeline (United). Since the natural gas at the Grand Bay Receiving Station was not of sufficient pressure to enter plaintiffs’ pipelines, it was necessary to construct facilities to compress said gas to the required pressure. Desiring to avoid the unnecessary costs of each party constructing their own compression facilities, plaintiffs, Gulf and Mid-Louisiana, agreed to construct one facility which would be used by all of the parties. The parties reached a verbal agreement towards this end sometime in June or July of 1975, and entered into a letter agreement dated July 11, 1975, reflecting the parties’ desire in this regard.
While a final, all encompassing, written agreement concerning the compression of the gas at the Grand Bay Receiving Station was being negotiated, Gulf and Mid-Louisiana undertook to initiate the construction of the compression facilities. Gulf and Mid-Louisiana contacted Crawford Enterprises to provide the compression equipment, and Crawford in turn subcontracted with Professional Engineering Services to design the equipment and piping layout. Gulf and Mid-Louisiana also contacted Marine, defendant herein, to design and construct the concrete compressor barge upon which the compression facilities would be *831 placed. Jim Clark of Gulf and W.A. Ingra-ham, Vice-President in charge of oil field sales for Marine, discussed the manufacture of a concrete barge adequate to handle the compressor facilities.
The first price quotation on the concrete barge was sent by letter dated April 30, 1975, and addressed to Gulf to the attention of Mr. C.D. Swinson, from Mr. Ingra-ham. Shortly after that, it was decided between Gulf and Mid-Louisiana that Mid-Louisiana would handle the actual acquisition of the barge for various reasons. It was also decided that a larger barge would be ordered and Mid-Louisiana requested Marine to issue another quote based on larger dimensions. A second quote dated August 27, 1975 was given by Mr. Ingra-ham to Mid-Louisiana based on the increased size of the barge. Finally, it was decided that a smaller barge would be requested since the second quote was deemed too expensive by Mid-Louisiana. Investigations were then made as to whether a smaller barge could handle the weight of the compressor equipment to be mounted. As a result, a third quote was issued by Marine to Mid-Louisiana. This third quote was accepted by Mid-Louisiana with Gulfs approval and Mid-Louisiana issued Purchase Order No. 1838 to Marine at a purchase price of One Hundred Eighty-Two Thousand, Two Hundred Eight Dollars ($182,208). Based on this purchase order, manufacture of the barge commenced. During the time the barge was being manufactured, representatives of Gulf as well as Mid-Louisiana were dealing directly at all times with representatives of Marine concerning the matter. No formal contract was entered into between the parties for the procurement of the barge. In addition, Gulf continued to deal directly with Crawford Enterprises and Professional Engineering Services concerning, the compression facilities to be placed on the barge.
On March 31, 1976, after the delivery of the barge but prior to the installation of the compression equipment, Gulf reimbursed Mid-Louisiana for inter alia the purchase price of the barge and assumed responsibilities for the completion of the project, moving the barge to Watts Construction Yard and for the installation of the compression facilities outlined on the specifications given to Marine. By August 11, 1976, the compression facilities had been installed, the barge was de-ballasted and an attempt was made to move it. The barge tilted first to one side then, to the other, demonstrating its lack of stability and top-heaviness. Had it not been for the shallowness of the slip, the barge would have capsized.
Gulf then contracted Marine to correct the problem, but was unsatisfied with the proposed method; thus Gulf contracted with J. Ray McDermott Company to devise a method of stabilizing the barge so it could be moved to the receiving station. McDermott successfully did so at an alleged cost of One Hundred Twenty-Four Thousand, Fifty-One Dollars and Thirty Cents ($124,051.30). On September 21, 1976, the barge was floated out of the slip and installed at the Grand Bay Receiving Station on September 22, 1976. Gulf also allegedly incurred additional charges from Crawford Enterprises in the amount of Four Thousand, Five Hundred Fifty-Four Dollars and Eighty Cents ($4,554.80) for additional pumps, etc. connected with the floating and re-sinking of the barge.
On January 19, 1977, Gulf, Mid-Louisiana, Southern and United entered into a formal agreement governing the compression of gas at the Grand Bay Receiving Station. This agreement was the finalization of the prior understanding between the parties described above, and provided that Gulf was legal owner of the barge and that Gulf would operate and maintain the compressor station facilities at the Grand Bay Receiving Station; and, further, that the capital expenditures of that facility would be passed through to all the parties to the agreement in the form of a charge for compressing the gas. Each party was to be charged on a percentage basis corresponding to the percentage of their ownership of the gas produced from the Main Pass Block 140 lease. The charges were not merely service charges, but constituted *832 a method of amortizing the capital expenditures of Gulf in constructing the compressor station. That agreement also provided that in the event that the gas reserves from the Block 140 lease were depleted before the investment in the facility was totally amortized, Mid-Louisiana, Southern and United were to reimburse Gulf their respective portion of the unamortized part of the total investment; and, in return, the facilities would be dismantled and each of the four gas companies would be entitled to their proportionate interest in the salvage value of said facilities.
On April 19, 1977, but effective as of January 11, 1977, Gulf conveyed the compressor station to Grand Bay at a price which did not include the expenditures incurred by Gulf in stabilizing the barge. This agreement allowed Gulf to charge Grand Bay with any expenses it had incurred relative to the compressor station facilities, including the costs it incurred in stabilizing the barge. Gulf did not do so at that time. However, Gulf has the right under the agreement to collect those monies from Grand Bay who, in turn, has the right to pass these costs on to all four users of the compressor station facilities in their proportionate shares.
As a result of the difficulties with the barge, on August 10, 1977, Gulf, Mid-Louisiana and Grand Bay filed this action against Marine seeking damages as a result of the allegedly defective barge furnished by defendant. The defendant filed exceptions of no right or cause of action which were heard by the trial court on November 30, 1979. The trial court sustained the exception of no right of action vis-a-vis Mid-Louisiana. On December 14, 1979, the plaintiffs filed their third supplemental and amending petition to which defendant again filed exceptions of no right of cause of action based upon lack of privity between Gulf, Grand Bay and Marine. On September 5, 1980, these exceptions were heard; and on September 30, 1980, the trial court overruled them. Marine filed an answer and the case was fixed for trial on November 28, 1983 at 10:00 a.m. On the morning of trial, the court, without prior notice to the plaintiffs, requested the defendant to re-urge its exception of no right of action. The court then set a hearing on the exception for 1:00 p.m. At the conclusion of the hearing, the court took the matter under advisement and advised both parties to be present and ready to proceed to trial the next morning at 9:00 a.m. At that time, the court sustained the defendant’s exception and dismissed plaintiffs’ suit.
The plaintiffs thereafter perfected this appeal. Defendant further re-urges the exception of no cause of action before this court. Plaintiffs allege as error the following:
that (1) the trial court erred in sustaining the defendant’s exception of no right of action because privity of contract is not necessary for an action by a vendee against a builder or a manufacturer; that
(2) the trial court erred in sustaining defendant’s exception of no right of action because it erroneously assumed that the purchase agreement for the barge was a construction contract instead of a sale; that
(3) alternatively, the trial court erred in sustaining defendant’s exception of no right of action because plaintiffs pled and proved a joint venture; and that
(4) alternatively, the trial court erred in dismissing Mid-Louisiana because the issue of whether it sustained damages is not triable on an exception of no right of action.
The trial court dictated its reason for judgment into the record stating that both Mid-Louisiana and Grand Bay failed to allege damages sufficient to support a cause of action; and further found the allegations of joint venture inapplicable. While the court stated the ruling was not based on a finding of fact that the case was not one in redhibition, the judge went on to say it was not a case in redhibition, but a construction contract.
*833 The exceptions of no right and/or cause of action are separate and distinct, each serving a particular purpose and each following particular procedural rules. Steadman v. Sladovich, 430 So.2d 816 (La.App. 5th Cir.1983).
In Babineaux v. Pernie-Bailey Drilling Company, 261 La. 1080, 262 So.2d 328 (1972), the Louisiana Supreme Court stated:
“There has been much discussion about the purpose of the exception of no right of action, and many attempts to differentiate that exception from the exception of no cause of action. One of the best statements of the definition of no right of action and of the basis of the distinction between it and no cause of action was given by the late Henry George McMahon: ‘The former [no cause of action ] is used to raise the issue as to whether the law affords a remedy to anyone for the particular grievance alleged by plaintiff; the latter [no right of action] is employed (in cases where the law affords a remedy) to raise the question as to whether plaintiff belongs to the particular class in whose exclusive favor the law extends the remedy, or to raise the issue as to whether plaintiff has the right to invoke a remedy which the law extends only conditionally.’ McMahon, The Exception of No Cause of Action in Louisiana, 9 Tul.L. Rev. 17, 29-30. See also McMahon, Parties Litigant in Louisiana, 11 Tul.L.Rev. 529-30.” (Emphasis added). 262 So.2d at page 333.
It is a matter of whether plaintiff has an interest in enforcing judicially the right asserted. Jefferson Bank & Trust Company v. National Gold Mining Co., Inc. and Virgil Lloyd, 420 So.2d 997 (La.App. 5th Cir.1982). However, the no right of action exception cannot be used to determine whether a particular defendant can stand in judgment in a particular case; i.e., to urge that plaintiff has no right simply because there is a valid defense. Babineaux, supra; Morton, supra; Selbar Bros., Inc. v. Bryant, 406 So.2d 251 (La.1981). Such defense goes to the merits only.
Evidence on the no right of action may be introduced when the grounds thereof do not appear from the petition. LSA-C.C.P. art. 931. However, the evidence is limited to the lack of interest of the plaintiff to institute the suit. Budd Construction Company, Inc. v. City of Alexandria, et al., 401 So.2d 1070 (La.App. 3d Cir.1981).
In regard to the exception of no cause of action, the Louisiana Supreme Court in Hero Lands Co. v. Texaco, Inc., 310 So.2d 93, 96 (La.1975) stated:
“The function of the peremptory exception of no cause of action is to test the legal sufficiency of the petition. The correctness of the well-pleaded allegations of fact is conceded, the issue is whether the face of the petition presents a case which legally entitles the mover to the redress sought. It is the sufficiency of the petition or motion in law which is put at issue by the exception. If a petition states a cause of action as to any ground or portion of the demand, the exception of no cause of action must be overruled. In considering a petition against which an exception of no cause of action has been raised, every reasonable interpretation must be accorded its language in favor of maintaining the sufficiency of the petition and affording the litigant an opportunity-to present his evidence. Pleadings must be reasonably construed so as to afford litigants their day in court, to arrive at the truth and to avoid a miscarriage of justice.” (Citations omitted)
Evidence is not allowed at any time to support or controvert the objection that the petition fails to state a cause of action. LSA-C.C.P. art. 931.
In this case, evidence was not introduced on the question of designation of the contract as either a building contract or a sale. All parties properly agreed it was not at *834 issue because it required a factual determination, since classifications of contracts are often difficult where the obligations to do or to give are mixed. In such a case one of the obligations must be determined as fundamental. Peoples Water Service v. Menge Pump & Machinery Co., Inc., 452 So.2d 752 (La.App. 5th Cir.1984). However, as appellant notes even if the contract is a building contract, under various theories, the right of action exists.
In this regard appellant first cites the recent Louisiana Supreme Court case of Aizpurua v. Crane Pool Co., Inc., 449 So.2d 471 (La.1984). In Aizpurua, supra, the plaintiffs purchased real estate from Smith which included a swimming pool. When problems developed with the pool, the plaintiffs sued Crane Pool Company, Inc., the contractor who built the pool for Smith. The contractor filed an exception of no right of action which was sustained by the trial court and affirmed by the First Circuit Court of Appeal. The Supreme Court reversed. Citing Louisiana Code Article 2503, the court held that a vendee was subrogated to all of the vendor’s rights and actions. The court analogized this situation with that in Media Production Consult., Inc. v. Mercedes-Benz of North America, Inc., 262 La. 80, 262 So.2d 377 (1972), “which allowed a consumer without privity to recover against the distributor of an automobile for latent defects under the implied warranty of fitness inherent in every sale.” Aizpurua at page 472.[1]
In addition, appellant cites Capitol City Leasing Corporation v. Hill, 404 So.2d 935 (La.1981), where the Louisiana Supreme Court upheld an assignment of warranty rights from a lessor to a lessee finding no prohibition by the Civil Code to assigning warranty rights.
The facts show that on or about March 31, 1976, Gulf purchased the barge in question along with other items from Mid-Louisiana evidenced solely by a check issued to Mid-Louisiana and without a formal transfer. Further, the evidence shows that Mid-Louisiana and Gulf specifically agreed that Mid-Louisiana transferred to Gulf all of the assets and all of the contract rights involved in the project. Thus, Gulf became subrogated to the Mid-Louisiana’s rights via Aizpurua or through a proper assignment under Capitol City Leasing Corp. However, the evidence also shows that Gulf lost those rights by virtue of its agreement in 1977 with Grand Bay in which an assignment of Gulf’s rights were made to Grand Bay. Thus, while Grand Bay has a right of action based on the Aizpurua case or by assignment, Gulfs right of action cannot be predicated on those legal theories due to the subsequent transfer to Grand Bay.
Appellant also argues that the Mid-Louisiana contract with Marine was alternatively a contract for the benefit of the third parties, Gulf and Grand Bay. Appellant cites State ex rel. Guste v. Simoni, Heck and Associates, 331 So.2d 478 (La.1976) for the exception to the general rule of privity and in which the court held a lack of privity is no bar to the right of an injured party to sue on a contract confected for his benefit. Appellee argues this rule of law is inapplicable since there is no distinct specification of a third-party beneficiary in the contract for the barge. The facts in this regard indicate that the parties did not execute a formal written contract for the project. However, both a letter proposal executed in 1976 prior to the acquisition of the barge as well as the testimony indicate that the entire project, including acquisition of the barge, was intended to benefit all the plaintiffs. This intent is substantiated by appellee’s witnesses who dealt with Gulf and Mid-Louisiana on that basis and who testified that it was known or assumed that this was a *835 joint project between, and for the benefit of, at least Gulf and Mid-Louisiana. Consequently, we find that the evidence is clear that the entire project was designed to benefit all three appellants. Thus each appellant has a right of action as third party beneficiaries even presupposing that the contract is a building contract.[2]
Appellant’s second and third assignments of error relate to the trial judge’s comment that the contract was a building contract and that alternatively the right of action may be based on a joint venture. Because of our findings above, we need not address those issues.
Appellant’s final specification of error asserts that the trial court erred in dismissing appellant, Mid-Louisiana, on the basis of a failure to allege damages. In this regard, appellant argues that the question of damages relates to the cause, not right of action, and that no evidence is admissible on an exception of no cause beyond the face of the pleadings.
The trial court found that Mid-Louisiana and Grand Bay alleged damages too speculative to support the action. Damages are the element of a eause of action, not a right of action; and as stated previously, the exception of no cause of action is determined solely upon the face of the petition. When an exception of no cause of action is raised, all the allegations of the plaintiffs’ petition are accepted as true and no evidence is admissible to support or defeat the exception. Gustin v. Shows, 377 So.2d 1325 (La.App. 1st Cir.1979).
After our review of the petitions, we find that appellants, Mid-Louisiana and Grand Bay, allege damages in the petition via their contractual relations.[3] The allegations do not state contingencies or speculative damages, but a contractual obligation to share in the expenditures of the project which by contract includes any losses sustained as a result of the difficulties with the barge. Consequently, we hold that the trial court erred in dismissing Mid-Louisiana and Grand Bay on that basis.
Finally, on appeal appellee re-urged the exception of no cause of action on the basis that appellant has failed to state a cause of action in redhibition and, thus, the suit should be dismissed. We disagree. The jurisprudence provides that if a petition states a cause of action as to any ground or portion of the demand, the exception of no cause of action must be overruled. Leenerts Farms, Inc. v. Rogers, 421 So.2d 216 (La.1982). After our review of the petition, we find that the petition herein alleges facts supportive of a cause of action in either redhibition or for breach of a construction contract. Consequently, we hereby deny the exception of no cause of action.[4]
For the foregoing reasons, after a review of the law and evidence, we hereby reverse the judgment of the trial court and remand the case for trial on the merits.
Appellee and appellants are to share costs of this appeal.
REVERSED AND REMANDED.

. As a separate, independent ground for judgment, the court cited LSA-C.C. art. 2011 which provides that a purchaser of immovable property can enforce a contract made by the vendor for the improvement of the property.

.We make no determination of the contract’s classification as that is a factual matter to be determined on a trial of the merits.

.We have not reproduced the allegations of petitions herein because of their length and complexity.

.Id.