608 So.2d 236 (1992)
ST. JUDE MEDICAL OFFICE BUILDING LIMITED PARTNERSHIP; the Travelers Insurance Company
v.
CITY GLASS AND MIRROR, INC., Western Waterproofing Company, Inc., Anning-Johnson Company, Super Sky Products, Inc., Richmond Steel, Inc., Southern States Masonry & Equipment, Inc., Boudreaux's Drywall, Inc., Intrepid Stone, Inc., and King and Co., Inc.
No. 92-CA-402.
Court of Appeal of Louisiana, Fifth Circuit.
October 27, 1992.
Writ Granted February 19, 1993.
*237 Brent B. Barriere, M. Nan Alessandra, S. Ault Hootsell, III, Phelps Dunbar, New Orleans, for plaintiff-in-intervention-appellant.
Terrence L. Brennan, Deutsch, Kerrigan & Stiles, John A. Stewart, Jr., Christy A. Zeringue, Hulse, Nelson & Wanek, Gus A. Fritchie, Robert E. Durgin, Montgomery, Barnett, Brown, Read, Hammond & Mintz, New Orleans, Bernard J. Williams, Danna E. Schwab, Duplass, Witman, Zwain & Williams, James W. Hailey, Jr., Hailey, McNamara, Hall, Larmann & Papale, Metairie, Peter A. Feringa, Jr., Christoffer Friend, Chaffe, McCall, Phillips, Toler & Sarpy, Henri Wolbrette, III, Arthur H. Leith, McGlinchey, Stafford, Cellini & Lang, J. Michael Johnson, Pamela G. Pucheu, Galloway, Johnson, Tompkins & Burr, New Orleans, Virgil A. Lacy, III, Blue, Williams & Buckley, Metairie, for defendant-appellee.
Kenneth C. Fonte, Golden & Fonte, Metairie, for plaintiff-appellee.
Before BOWES, GRISBAUM and CANNELLA, JJ.
GRISBAUM, Judge.
This appeal, in a lawsuit arising from the defective construction of a medical office building, concerns the trial court's granting of several defendants' exceptions of no cause and no right of action, and the dismissal of the intervenor from the suit. We affirm.

BASIC RECORD FACTS
In 1983, the plaintiff, St. Jude Medical Office Building Limited Partnership (St. Jude), entered into a contract with Spaw-Glass Construction, Inc. (Spaw-Glass), a general contractor from Houston, Texas, for the construction of a seven-story medical office building. In turn, Spaw-Glass entered into a number of subcontracts for the performance of various portions of the construction project. By February 1985, the Medical Office Building (MOB) was completed.
St. Jude then sought and obtained on October 10, 1985, permanent financing through the Travelers Insurance Company (Travelers), which issued a commitment for financing and a loan in the amount of 25 million dollars. The loan was secured by an act of real and chattel mortgage encumbering the MOB, its underlying property and all related land and improvements.
Following the completion of the MOB, various problems arose, including water leakage at the windows, skylights, and patios, and St. Jude became aware of structural defects in the building. St. Jude thereafter filed suit for damages on February 10, 1988, against many of the numerous subcontractors, including City Glass and Mirror, Inc., Boudreaux's Dry Walls, Inc., Intrepid Stone, Inc., Southern States Masonry, Inc., Super Sky Products, Inc., Gulf Coast Waterproofing, Inc., Western Waterproofing Company, Inc., and Burke & Associates, Inc. It later amended its petition, adding Spaw-Glass, among others, as defendant in the suit.
*238 In March of 1990, St. Jude defaulted on its note and Travelers filed suit in the United States District Court for the Eastern District of Louisiana, seeking a recognition of its mortgage and a judgment for all amounts due under the note. The federal court, in September 1990, entered a partial final judgment awarding Travelers 26 million dollars and recognizing its mortgage. The property was then seized by the United States Marshall and sold through a judicial sale to Travelers.
Thereafter, on November 26, 1991, Travelers filed a petition of intervention, alleging that it was the proper party to assert the claims for damages. St. Jude and the other aforementioned defendants filed exceptions of no cause and no right of action. After a hearing, the trial court granted the exceptions, dismissing the intervention. Thus, this appeal ensued.

ANALYSIS
At the outset we note that "[t]he exceptions of no right and ... no cause of action are separate and distinct, each serving a particular purpose and each following particular procedural rules." Steadman v. Sladovich, 430 So.2d 816, 817 (La.App. 5th Cir.1983) (citations omitted). Accordingly, they must be treated individually.

NO CAUSE OF ACTION
The purpose of this exception is to determine the legal sufficiency of the petition. Cortez v. Total Transp., Inc., 577 So.2d 292 (La.App. 5th Cir.1991). It is wellsettled that "[t]he exception is triable on the face of the papers and for the purposes of determining the issues raised by the exception, the well[-]pleaded facts in the petition must be accepted as true." Darville v. Texaco, Inc., 447 So.2d 473, 474-75 (La.1984) (citations omitted), writ denied, 448 So.2d 1302 (La.1984). Furthermore, it "may only be maintained when it is clear that the law affords no remedy ... for the particular grievance alleged." Cortez, supra, at 295 (citation omitted).
Here, Travelers' petition of intervention alleges that the MOB sustained damages from the faulty construction of the various subcontractors named in St. Jude's petition, that Travelers is the present owner of the MOB, and that, because of its ownership interest, Travelers is entitled to judgment against the defendants. We think not, and we further find that, even accepting the facts alleged as true, Travelers' petition for intervention does not allege facts which constitute a particular grievance for which the law affords a remedy against these named defendants; thus, the exception was properly maintained.

NO RIGHT OF ACTION
"The exception of no right of action, on the other hand, is designed to terminate a suit brought by one with no legal interest to assert it." Cortez, supra, at 295 (citation omitted). "It challenges the plaintiff's interest in the subject matter, or his lack of capacity to proceed with the action." Id. at 295-96 (citation omitted).
Our Louisiana Supreme Court has ruled that a purchaser of a home has a right of action against a builder for the breach of any implied warranty in a building contract which the builder had with the purchaser's vendor. Aizpurua v. Crane Pool Co., Inc., 449 So.2d 471 (La.1984). It further found that an "implied warranty of materials and workmanship in a building contract is one to which a subsequent purchaser is subrogated." Id. at 473 (citation omitted). Our Circuit, in fact, applied this doctrine in a matter involving a datien en paiement of a number of condominium units. See Landmark Land Co. of La. v. Jemison, 558 So.2d 802 (La.App. 5th Cir. 1990). However, these principles do not substantiate the scenario before us because our jurisprudence is well-settled that "the landowner at the time of the alleged damages is the person with the real and actual interest to assert the claim for damages to the land." Dorvin Land Corp. v. Parish of Jefferson, 469 So.2d 1011, 1013 (La.App. 5th Cir.1985). As we stated in the Dorvin case
This right is a personal right, as opposed to a real right, consequently, it is not transferred by a mere transfer of the title to the land. Rather, for the subsequent *239 owner of the land to be in a position to assert the claim, there must be a specific assignment of the right to him.
Id. at 1013 (citations omitted; emphasis added).
Our decision in Dorvin, supra, was predicated on a well-established line of cases which held that the title of a purchaser does not carry any right to recover damages to the property for injuries accrued prior to the acquisition of such title. See Gumbel v. New Orleans Terminal Co., 197 La. 439, 1 So.2d 686 (La.1941); Frank v. Magee, 50 La.Ann. 1066, 23 So. 939 (La.1898). Indeed, the right of action of damages for injury to property prior to a seizure cannot be deemed an accessory or part of the immovable. Frank, supra, at 940. See also Prados v. S. Cent. Bell Tel. Co., 329 So.2d 744, 750 (La.1975).
Furthermore, La.C.C. art. 2011, upon which Aizpurua, supra, was partially based, has been repealed and clarified in the new La.C.C. art. 1764, which provides as follows:
A real obligation is transferred to the universal or particular successor who acquires the movable or immovable thing to which the obligation is attached, without a special provision to that effect.
But a particular successor is not personally bound, unless he assumes the personal obligations of his transferor with respect to the thing, and he may liberate himself of the real obligation by abandoning the thing.
Importantly, Official Comment (f) to this article states:
Louisiana courts have held that the indemnity due to the owner of an immovable for the expropriation of a part of that immovable, and damages due to the owner of a thing for its partial destruction or for an interference with the owner's rights, belong to the person who was owner at the time of the expropriation, destruction, or interference. These are personal rights that are not transferred to a successor by particular title without a stipulation to that effect. Rogers v. Louisiana Power and Light Co., 391 So.2d 30 (La.App. 3rd Cir.1980); Yiannopoulos, Predial Servitudes § 147 (1983).
When the owner of the servient estate interferes with the servitude, he violates a real obligation, and may cause damage to the owner of the dominant estate. If the owner of the dominant estate sells it, the claim for damages still belongs to him. It is a personal right that does not pass with the immovable unless assigned. Conversely, when the owner of the dominant estate abuses the servient estate and causes damage, an indemnity may be due to the owner of the servient estate. If the servient estate is sold, the indemnity belongs to the vendor. It is a personal right that does not pass with the immovable unless assigned. See Dunlap v. Red River Waterway Commission, 405 So.2d 655 (La.App. 3rd Cir. 1981); Dickson v. Arkansas Louisiana Gas Co., 193 So. 246 (La.App. 2nd Cir. 1939); Yiannopoulos, Predial Servitudes § 157 (1983). In contrast, the obligation to demolish works and to restore the premises to their previous condition is a real obligation, following the immovable into the hands of any acquirer. Id.; 3 Planiol et Ribert, Traité pratique de droit civil francais 966 (2d ed. Picard 1952).
Lastly, we note that our jurisprudence differentiates between a judicial sale and other types of sales with respect to purchaser rights. In a judicial sale, there is no warranty of title. Davis v. Chapman, 516 So.2d 138 (La.App. 4th Cir.1987); Ponder v. Vernon, 357 So.2d 622 (La.App. 1st Cir.1978). As such, the purchaser at a judicial sale has no claim in redhibition. La.C.C. arts. 2537, 2619. Clearly, the intent of the law is to afford a purchaser at a judicial sale fewer remedies than other purchasers, particularly in a case such as the present one, where the purchaser, Travelers, was fully aware at the time of the sale of the problems associated with the MOB, over which a lawsuit had been pending.
Thus, Travelers has no right of action to intervene in this suit. The claims for damages to the MOB remain those of the owner at the time of injury, that is, St. Jude. *240 Ergo, the trial judge was correct in maintaining the exception of no right of action.
For the reasons assigned, the judgment of the trial court is hereby affirmed. All costs of this appeal are to be assessed against the appellant.
AFFIRMED.
BOWES, J., concurs with the affirmation of the judge of the trial court, but not with all of the reasoning in the opinion.