619 So.2d 529 (1993)
ST. JUDE MEDICAL OFFICE BUILDING LIMITED PARTNERSHIP
v.
CITY GLASS AND MIRROR, INC., et al.
No. 92-C-3066.
Supreme Court of Louisiana.
May 24, 1993.
Brent B. Barriere, Laura Tiffany Hawkins, Sessions A. Hootsell, III, Maria N. Alessandra, Phelps Dunbar, New Orleans, for applicant.
Virgil A. Lacy, III, Blue, Williams & Buckley, Metairie, Peter A. Feringa, Jr., Christopher C. Friend, Chaffe, McCall, Phillips, Toler & Sarpy, William L. Kohler, Terrence L. Brennan, Charles F. Seemann, Jr., Herman J. Gesser, III, Deutsch, Kerrigan & Stiles, New Orleans, Bernard J. Williams, Danna E. Schwab, Duplass, Witman, Zwain & Williams, Metairie, P.G. Pucheu, J. Michael Johnson, Galloway, Johnson, Thompson & Burr, New Orleans, James W. Hailey, Jr., Hailey, McNamara, Hall, Larmann & Papale, Metairie, Christy A. Zeringue, John A. Stewart, Jr., Hulse, Nelson & Wanek, Gustave A. Fritchie, III, Robert E. Durgin, Montgomerty, Barnett, Brown, Read, Hammond & Mintz, Henri Wolbrette, III, Arthur H. Leith, McGlinchey, Stafford, Celeni & Lang, Glenn B. Adams, Porteous, Hainkel, Johnson & Sarpy, New Orleans, Kenneth C. Fonte, Metairie, A. Morgan Brian, Jr., New Orleans, Leroy J. Falgout, Kenner, for respondent.
WATSON, Justice.[1]
Travelers Insurance Company was the mortgagee of the St. Jude Medical Office Building Limited Partnership (the Partnership) and acquired ownership of the building at a judicial sale after the Partnership defaulted on its mortgage. Can Travelers intervene in the Partnership's suit against the building's contractor and sub-contractors?

FACTS
In 1983, the St. Jude Medical Office Building Limited Partnership contracted with Spaw Glass, Inc. for construction of the St. Jude Medical Office Building, a seven-story medical office and retail complex in Kenner, Louisiana. Spaw Glass contracted with various sub-contractors. The building was completed in February of 1985. Approximately two months later, the Partnership applied to Travelers for *530 permanent financing. On October 10, 1985, Travelers advanced $25 million on the Partnership's promissory note. The note was secured primarily by a real and chattel mortgage on the building, the underlying property, and all related land and improvements. The note and mortgage contained in rem language limiting Travelers' default remedy to judicial sale of the property.
After closing the loan with Travelers, the Partnership discovered defects in the building's construction, including water leakage through the second floor windows, leakage through the building's skylights and ground settling damage to the sidewalks and driveways. The Partnership asked Spaw Glass and the sub-contractors to voluntarily repair their allegedly defective work. The requested repairs were never performed. At an impasse, the Partnership filed suit against Spaw Glass and the sub-contractors in February of 1988.
In its original and amended petitions, the Partnership alleged that defects in the materials and workmanship of the building breached express and implied warranties of the contractor and several sub-contractors. Damages were estimated at $10 million.
In March of 1990, the Partnership defaulted on its note. On June 1, 1990, Travelers filed suit in the United States District Court for the Eastern District of Louisiana. Among other relief, Travelers requested recognition of its in rem mortgage on the building, a judgment for the amount due on the note, and seizure and sale of the building. On November 24, 1990, the federal court entered a partial final judgment in favor of Travelers, recognizing its mortgage and awarding damages of approximately $26 million. Travelers executed on the judgment with a writ of fieri facias directing the marshal to seize and sell the building. Travelers acquired the building at a judicial sale on October 18, 1991, for $7.5 million.
On August 16, 1990, Travelers petitioned to intervene in the Partnership's state court lawsuit against the building's contractor and subcontractors. This was after the United States Marshal had seized the property but before Travelers bought the building. On June 15, 1991, the trial court granted defendants' exception of prematurity, dismissing the petition for intervention, but granting Travelers leave to refile its petition if it acquired title to the building. On November 26, 1991, after purchasing the building, Travelers again filed a petition of intervention, alleging that it was subrogated to the Partnership's claims for construction breaches of express and implied warranties. The Partnership and several of the defendants filed exceptions of no cause of action and no right of action. The trial court sustained both exceptions and dismissed Travelers' petition with prejudice. In a well-reasoned opinion, the court of appeal affirmed the trial court judgment. 608 So.2d 236 (La.App. 5th Cir. 1992). A writ was granted to review the court of appeal judgment. 613 So.2d 959 (La.1993).

LAW AND ANALYSIS
The exception of no right of action tests whether the plaintiff has any interest in judicially enforcing the right asserted. G.I. Joe, Inc. v. Chevron U.S.A., Inc., 561 So.2d 62 (La.1990); Stevens v. Johnson, 230 La. 101, 87 So.2d 743 (1956).
The general Louisiana rule is that a purchaser cannot recover from a third party for property damage inflicted prior to the sale. Prados v. South Central Bell Telephone Company, 329 So.2d 744, 750 (La.1976); Gumbel v. New Orleans Terminal Co., 197 La. 439, 1 So.2d 686 (1941); Taylor v. New Orleans Terminal Co., 126 La. 420, 52 So. 562 (1910); McCutchen v. Texas & P. Ry. Co., 118 La. 436, 43 So. 42 (1907); Bradford v. Richard, et al., 46 La.Ann. 1530, 16 So. 487 (1894); Clark v. Warner & Co., 6 La.Ann. 408 (La.1851).
Travelers relies on the decision in Aizpurua v. Crane Pool Co., Inc. 449 So.2d 471 (La.1984), for its right to intervene in the Partnership's suit. In Aizpurua, the purchasers of a residence brought suit against the company that had constructed a swimming pool on the property prior to plaintiffs' purchase. At that time, LSA-C.C. art. 2011 provided:

*531 Not only the obligation, but the right resulting from a contract relative to immovable property, passes with the property. Thus, the right of servitude in favor of immovable property, passes with it, and thus also the heir or other acquirer will have the right to enforce a contract made for the improvement of the property by the person from whom he acquired it. (Emphasis added).
Relying on LSA-C.C. art. 2011, now repealed, Aizpurua decided that a subsequent purchaser was subrogated to the implied warranty of materials and workmanship in a building contract. Despite lack of privity, the purchaser of immovable property was allowed to enforce a property improvement contract made by the previous owner.
In 1984, LSA-C.C. art. 2011 was repealed and was replaced by LSA-C.C. art. 1764. LSA-C.C. art. 1764 now provides:
A real obligation is transferred to the universal or particular successor who acquires the movable or immovable thing to which the obligation is attached, without a special provision to that effect.
But a particular successor is not personally bound, unless he assumes the personal obligations of his transferor with respect to the thing, and he may liberate himself of the real obligation by abandoning the thing.
Official Comment (D) to this article states that Civil Code Article 2011 (1870) was suppressed because its provisions were conceptually inconsistent with other provisions of Louisiana law. It was, of course, in derogation of the general rule of non-recovery.
Aizpurua was based on the now repealed provisions of LSA-C.C. art. 2011. The substantive changes made by LSA-C.C. art. 1764 have superceded Aizpurua. Travelers cannot rely on Aizpurua. In addition, important distinctions exist between the facts in Aizpurua and those in this case. In Aizpurua, plaintiffs purchased their residence by a conventional sale and the alleged defects in the pool's construction were hidden from them at the time of the sale. Here, Travelers purchased the building at a judicial sale and knew of the defects in the building. Under LSA-C.C. arts. 2537 and 2619, Travelers would have had no redhibition claim for hidden defects because the property was purchased at judicial sale.
Applying LSA-C.C. art. 1764 to the facts of this case, the central issue is whether an action for defective construction of a building is based on a real or a personal obligation.
Official Comment (f) to LSA-C.C. art. 1764 provides in pertinent part:
Louisiana courts have held that ... damages due to the owner of a thing for its partial destruction or for an interference with the owner's rights, belong to the person who was the owner at the time of the ... destruction or interference. These are personal rights that are not transferred to a successor by particular title without a stipulation to that effect. (Emphasis added).
The underlying obligation here is personal and not real. As a successor, without stipulation or assignment, Travelers has no right of action to intervene in the Partnership's suit.

CONCLUSION
Travelers does not have a right of action to intervene in this suit. Because Travelers has no right of action, the issue of a cause of action is pretermitted. For the foregoing reasons, the judgment of the court of appeal is affirmed.
AFFIRMED.
ORTIQUE, J., dissents and assigns reasons.
LEMMON, J., dissents and assigns reasons.
ORTIQUE, Justice, dissents.
We granted certiorari to determine whether Travelers may intervene in St. Jude's pending suit against City Glass. It is my view that Travelers meets the procedural requirements of LSA-C.C.P. art. 1091 and, therefore, has a right to intervene in *532 this suit. Consequently, I respectfully dissent.
LSA-C.C.P. art. 1091 provides,
Art. 1091. Third person may intervene
A third person having an interest therein may intervene in a pending action to enforce a right related to or connected with the object of the pending action against one or more of the parties thereto by:
(1) Joining with plaintiff in demanding the same or similar relief against the defendant;
(2) Uniting with defendant in resisting the plaintiff's demand; or
(3) Opposing both plaintiff and defendant.
The article's official comments indicate that its provisions embrace the concept that a third person having a justiciable right related to or connected with the object of the principal suit may enforce that right through intervention. That concept was joined with the provisions of article 389 of the Code of Practice of 1870 which defined intervention as "a demand by which a third person requires to be permitted to become a party in suit between other persons; by joining the plaintiff in claiming the same thing, or something connected with it, or by uniting with the defendant in resisting the claims of the plaintiff, or, where his interest requires it, by opposing both," to form article 1091. Under these principles, even if it does not have an action in warranty against City Glass, Travelers, as owner of the subject of the warranty action, has a justiciable right related to or connected to the pending action.
The Partnership's suit seeks to compel City Glass to repair the building which it no longer owns, or to pay the cost equivalent of those repairs. As the owner of the building, Travelers has an interest against the Partnership "connected with the object of the pending action" to prevent the Partnership's unjust enrichment at its expense. LSA-C.C. arts. 2055 and 2292.[1] Travelers' interest in preventing this unjust enrichment is sufficient to satisfy the procedural requirement of LSA-C.C.P. art. 1091, and to defeat the peremptory exception of no right of action.
Pleadings must be construed reasonably so as to afford litigants their day in court, to arrive at the truth, and to do substantial justice. LSA-C.C.P. art. 865. Teachers' Retirement System of Louisiana v. Louisiana State Employees' Retirement System, 456 So.2d 594 (La.1984). When it can reasonably do so, the court should maintain a petition against a peremptory exception so as to afford the litigant an opportunity to present his evidence. Id. Travelers' petition for intervention adequately sets forth facts establishing substantive theories of action in equity and quasi contract. LSA-C.C. arts. 2055 and 2292. Therefore, as intervenor has an interest in judicially enforcing the rights asserted, the peremptory exception of no right of action should not have been sustained.
NOTES
[1] Pursuant to Rule IV, Part 2, § 3, Marcus, J. was not on the panel which heard and decided this case. See the footnote in State v. Barras, 615 So.2d 285 (La.1993).
[1] Those articles provide in pertinent part as follows:

Art. 2055. Equity and usage
Equity, as intended in the preceding articles, is based on the principles that no one is allowed to take unfair advantage of another and that no one is allowed to enrich himself unjustly at the expense of another....
Art. 2292. Obligations contracted other than by agreement
Certain obligations are contracted without any agreement, either on the part of the person bound, or of him in whose favor the obligation takes place.
Some are imposed by the sole authority of the laws, others from an act done by the party obliged, or in his favor.
* * * * * *
The obligations which arise from a fact, personal to him who is bound, or relative to him, result either from quasi contracts, or from offenses or quasi-offenses.