JaLOTTINGER, Chief Judge.
In this action, plaintiff seeks damages as a result of DOTD’s abandonment of its plans to construct a road over plaintiffs property. From a judgment awarding plaintiff damages in the amount of $1,607,445.00, DOTD appeals.
FACTS
In the early 1980’s, James G. Gaspard (hereinafter, “Gaspard”), then a District Right of Way Supervisor with the Louisiana Department of Transportation and Development (hereinafter, “DOTD”), was directed to locate an acceptable site for the construction of a new, permanent DOTD fleet landing facility as the lease on the existing facility was about to expire. A fleet landing facility is used to service and repair ferry boats and other marine vessels operated by DOTD. After examining a number of potential sites, Gaspard contacted Mr. Johnny Sumrall (hereinafter, “Sumrall”) to inquire whether he had any property situated along the Intra-coastal Canal in West Baton Rouge Parish.
Sumrall, who was at the time president and sole stockholder of Greater Baton Rouge Industrial Park (hereinafter, “GBRIP”), advised that while his property did not extend to the Intracoastal, the property situated to the rear of his tract fronted on the waterway. Thereafter, Sumrall arranged a meeting in New Orleans between himself, representatives of DOTD, and representatives of the Chotin Trust which owned the property fronting the Intraeoastal.[1]
In October and November of 1983, DOTD entered into right of way agreements with both GBRIP and the Chotin Trust. DOTD immediately began clearing the right of way at the rear of the GBRIP property and making improvements to the existing roadway. The work came to a halt after DOTD applied for a permit from the United States Army Corps of Engineers for construction of the fleet landing facility. Through a letter dated January 14, 1985, the Corps of Engineers informed DOTD that certain conditions would have to be met before a permit would be issued to complete the project. The conditions imposed by the Corps of Engineers affected both the GBRIP and Chotin tracts. Because it did not believe it could comply with the conditions imposed, DOTD decided to abandon its plans to construct a fleet landing facility at the site. With the project halted by the Corps of Engineers, DOTD offered twice to rescind the bright of way agreement with GBRIP. These offers were summarily dismissed by GBRIP which insisted instead that DOTD complete the roadway.
*339 GBRIP subsequently changed its corporate name to Metro West Development Corporation (hereinafter, “Metro West”). Later, on May 31,1991, Metro West transferred the property in question to plaintiff, WBR Corporation (hereinafter, “WBR”), another entity formed and wholly owned by Johnny Sum-rail. At trial, Mr. Sumrall testified that he repeatedly made, on behalf of GBRIP, and later, WBR, amicable demands upon DOTD to complete the project.
On July 22, 1993, WBR filed the instant suit against DOTD seeking damages for its failure to complete the promised roadway.
ACTION OF THE TRIAL COURT
Trial of this matter was conducted on July 24, 1996. At the conclusion of the trial, the trial court took the matter under advisement and, thereafter, rendered judgment in WBR’s favor in the amount of $1, 607,445.00.[2] From this judgment, DOTD has appealed.
ASSIGNMENTS OF ERROR
On appeal, DOTD sets forth the following assignments of error:
1) The donation of the servitude of right of way did not create an obligation on the part of DOTD to construct the project;
2) WBR Corporation has no right of action for damages arising out of the right of way deed; and
8) WBR did not sustain any damages.
In conjunction with the filing of its appellate brief, appellant, DOTD, has also filed a peremptory exception raising the objection of no right of action. The basis for the exception filed by DOTD is that plaintiff, WBR, failed to establish it is entitled to sue for property damages sustained prior to its acquisition of the property.
DISCUSSION
A review of the trial court’s written reasons for judgment reveals that the trial court found that GBRIP’s motivation for granting a permanent servitude over its property was DOTD’s promise to in turn construct a paved road thereon. The trial court further found the only ^condition imposed by the Corps of Engineers which impacted DOTD’s construction of a roadway on GBRIP’s property was the requirement that culverts be installed under the roadway so as to avoid alteration of existing drainage patterns. Uncontradict-ed evidence adduced at trial indicated that compliance with said condition would have increased the cost of the fleet landing project by approximately $20,000.00. The court concluded that GBRIP’s successor-in-interest, WBR, had proven that it had sustained damages as a result of DOTD’s breach of its contract to build the road.
Based upon our review of the evidence before us, we note that the language in the “Right Of Way Deed” between GBRIP and DOTD provides that the primary consideration for GBRIP’s grant of the said right of way was “the benefits, uses and advantages accruing to Grantor by reason of the location of the FLEET LANDING SITE, STATE PROJECT NO. 600-20-06, WEST BATON ROUGE PARISH”. It is undisputed that after entering into the right of way agreement, DOTD received notification from the Corps of Engineers that certain conditions had to be met in order for the required permits to issue. The conditions imposed upon DOTD through the January 14, 1985 letter from the Corps of Engineers were as follows:
1) DOTD “shall not return effluent from the cleaning, scraping and/or painting of vessels to the [Gulf Intracoastal Waterway] so as to avoid potential long-term impacts on aquatic organisms.”
2) DOTD “shall avoid any unnecessary alteration or removal of existing vegetation during construction, operation, or maintenance of the fleeting facility and access road.”
3) DOTD “shall modify the design of the access road eliminating continuous bor *340 row/drainage ditches on either side of the access road and incorporating culverts at 400-foot intervals to avoid major alteration of existing water circulation patterns.”
4) DOTD “shall notify the U.S. Army-Corps of Engineers, NOD, of any applications for DOTD right-of-way permits by property owners on either side of the access road, and that no DOTD right-of-way permits off the access road would be issued until NOD has reviewed the proposed activity and either stated that no Department of the Army (DA) permit would be required or has issued a DA permit for the specific activity.”
While Mr. Sumrall claimed at trial that the only condition imposed by the Corps of Engineers which affected his property was the culvert requirement[3], it is clear that the primary ^reason for DOTD’s failure to complete the project was its belief that it could not insure that spillage from the servicing and repairing vessels would not enter the waterway if the proposed facility was constructed on the adjacent Chotin property.
Despite the fact that DOTD’s promise to construct a road on his property may have been Sumrall’s primary motivation for granting the right of way, DOTD’s reason for securing the right of way and building the proposed road was clearly to provide a means by which to access its facility. This objective is evident from the language of the right of way agreement.
La. Civil Code art. 1875 provides that a fortuitous event “is one that, at the time the contract was made, could not have been reasonably foreseen.” Additionally, La. Civ. Code art. 1877 provides that “[wjhen a fortuitous event has made a party’s performance impossible in part, the court may reduce the other party’s counterperformance proportionally, or, according to the circumstances, may declare the contract dissolved.”
The aforementioned code articles were enacted pursuant to the 1984 revision of the articles relating to obligations which became effective on January 1, 1985. According to the comments which follow article 1875, it reproduces the substance of former codal articles, including La. Civ.Code arts. 3556(14) and 3556(15) of the Louisiana Civil Code of 1870. Revised article 1877 changes the former law to the extent that it allows the court to uphold a contract while reducing the amount for which the parties are bound.
At the time these contracts were executed by the parties, it is safe to assume that no one believed that there would be any reason why the Chotin property could not be used for its intended purpose, i.e., the construction of a fleet landing facility on the Intracoastal waterway. The conditions subsequently imposed upon DOTD by the Corps of Engineers made construction of such a facility at this location unfeasible, and, in the opinion of this court, constituted an unforeseen “fortuitous event” which hindered DOTD from proceeding further with the project. La. Civ.Code art. 1875; Nanny’s Shoe Store, Inc. v. Beder & Company, 394 So.2d 810, 811 (La.App. 4th Cir.1981).
It is undisputed that prior to abandoning the fleet landing project, DOTD completely rebuilt and improved the existing portion of the roadway on the property owned by GBRIP, and further took same into the state highway system. It would be have been | (¡unreasonable to expect DOTD to proceed with the planned extension of the roadway once its motivation for doing so had, through no fault of its own, become unfeasible. Similarly, it would be inequitable to penalize DOTD for its failure to complete the contract under these circumstances.
PEREMPTORY EXCEPTION
DOTD argues that the right to recover damages to property is a personal right which belongs to the owner of the property at the time the damages were sustained. In support of this argument, DOTD cites St. Jude Medical Office Building Limited Partnership v. City Glass & Mirror, Inc., 608 So.2d 236 (La.App. 5th Cir.1992), writ grant *341 ed, 613 So.2d 959 (La.1993), affirmed, 619 So.2d 529 (La.1993); and Dorvin Land Corporation v. Parish of Jefferson, 469 So.2d 1011 (La.App. 5th Cir.1985).
Plaintiff-appellee, WBR, alleged in paragraph 4 of its Petition For Damages that it is the legal successor in interest to GBRIP. In its answer to the petition, DOTD denied this allegation. At trial, WBR did not introduce evidence of the purported transfers, and the only evidence in the record to substantiate this claim is the testimony of Sumrall, the sole shareholder of both GBRIP and WBR, who, on page 117 of the record, stated:
Q: Okay. And was the property and all rights pertaining to the property included in the transfers down through to WBR Corporation?
A: That’s correct.
As the court noted in Dorvin,
According to Article 681 of the Code of Civil Procedure, an action can be brought only by a person having a real and actual interest which he asserts. Under the jurisprudence the landowner at the time of the alleged damages is the person with the real and actual interest to assert the claim for damages to the land. This right is a personal right, as opposed to a real right, consequently, it is not transferred by a mere transfer of the title to the land. Rather, for the subsequent owner of the land to be in a position to assert the claim, there must be a specific assignment of the right to him. Gumbel v. New Orleans Terminal Co., 197 La. 439, 1 So.2d 686 (La.1941); Prados v. South Central Bell Telephone Co., 329 So.2d 744 (La.1975) [on rehearing].
Dorvin Land Corporation v. Parish of Jefferson, 469 So.2d at 1013.
Based upon the foregoing, and absent evidence of a specific assignment from GBRIP to WBR of its right to recover damages under the contract with DOTD, we must conclude that WBR has no right of action to pursue this claim. While we would have ordinarily 17remanded this matter back to the trial court with instructions to allow WBR, assuming it is able, to correct this deficiency, this remedy is moot in light of our holding above.
CONCLUSION
For the reasons set forth above, the judgment appealed from is reversed and set aside. Additionally, DOTD’s peremptory exception raising the objection of no right of action is sustained. Judgment is rendered in favor of DOTD dissolving its contract with GBRIP and dismissing plaintiffs demands at its cost.
EXCEPTION SUSTAINED; REVERSED AND RENDERED.

. At the meeting, Sumrall made a presentation to the representatives of the Chotin Trust as to the benefits that such a project would offer to GBRIP and the Chotin Trust by opening up their respective properties for development.

. The amount awarded is based upon estimates calculated by Kermit Wayne Williams, a West Baton Rouge Parish realtor and real estate appraiser. At trial, Mr. Williams testified that Mr. Sumrall's company sustained damages to his land in the amount of $1,343,325.00, together with delay damages or lost opportunity costs in the amount of $264,120.00, for a total of $1,607,-445.00.

. Mr. Sumrall conveniently fails to address the fact that he may have been precluded from fully developing his property, even if DOTD had constructed the road in question, under the fourth condition imposed by the Corps of Engineers which appears to restrict the use of and access to the proposed road by adjoining property owners.