47 So.3d 428 (2010)
EAGLE PIPE AND SUPPLY, INC.
v.
AMERADA HESS CORPORATION, et al.
No. 2009-CA-0298.
Court of Appeal of Louisiana, Fourth Circuit.
February 10, 2010.
Order Granting Rehearing April 21, 2010.
Opinion Granting Rehearing and Vacating Opinion September 8, 2010.
*430 Stephen B. Murray, Sr., Arthur M. Murray, Stephen B. Murray, Jr., Korey A. Nelson, Murray Law Firm, and Stuart H. Smith, Michael G. Stag, Lloyd S. Jolibois, Jr., Robert D. McMillin, Smith Stag, L.L.C., New Orleans, LA, for Eagle Pipe and Supply, Inc.
Mary S. Johnson, Jill T. Losch, Johnson Gray McNamara, LLC, Mandeville, LA, and Thomas M. McNamara, Johnson Gray Mcnamara, LLC, Lafayette, LA, and Chad J. Mollere, Johnson Gray McNamara, LLC, New Orleans, LA, for Shell Oil Company, Shell Offshore Inc., Swepi LP, and Kerr-McGee Oil & Gas Corporation.
F. Henri Lapeyre, Jr., Etienne C. Lapeyre, Lapeyre and Lapeyre, L.L.P., New Orleans, LA, for Berry Petroleum Company.
Patrick A. Talley, Jr., Louis M. Grossman, Frilot L.L.C., New Orleans, LA, for Chevron U.S.A. Inc.
Thomas A. Rayer, Jr., Michael H. Bagot, Jr., Jonathan D. Shaver, Wagner & Bagot, L.L.P., New Orleans, LA, for Patterson Truck Line, Inc.
Joseph E. LeBlanc, Jr., Meryl McLendon, Leblanc Bland, P.L.L.C., Houston, TX, and Elizabeth S. Wheeler, Amanda N. Moeller, Leblanc Bland, P.L.L.C., New Orleans, LA, for Hess Corporation.
Glen M. Pilie, Martin A. Stern, Ronald J. Sholes, Roland M. Vandenweghe, Jr., Lauren J. Delery, Adams and Reese LLP, New Orleans, LA, for Exxon Mobil Corporation.
Christoffer C. Friend, Brett F. Willie, Susan R. Laporte, Curry & Friend, APLC, New Orleans, LA, for Oxy USA, Inc.
Dale P. Martin, Martin Law Firm, Broussard, LA, for Ace Transportation LLC, Dynasty Transportation LLC, Venture *431 Transport Logistics, L.L.C., and Venture Transport Logistics Holdings, L.L.C.
Stanley A. Millan, Judith V. Windhorst, Jones Walker Waechter Poitevent Carrere & Denegre, L.L.P., New Orleans, LA, and Olivia S. Regard, Jones Walker Waechter Poitevent Carrere & Denegre, L.L.P., Lafayette, LA, for Packard Truck Lines, Inc.
Thomas L. Gaudry, Jr., Michael D. Peytavin, Gaudry Ranson Higgins & Gremillion, L.L.C., Gretna, LA, for ACME Truck Line, Inc.
Thomas E. Balhoff, Judith R. Atkinson, Carlton Jones, III, Roedel Parsons Koch Blache Balhoff & McCollister, Baton Rouge, LA, for Intracoastal Tubular Services, Inc.
(Court composed of Judge TERRI F. LOVE, Judge EDWIN A. LOMBARD, Judge PAUL A. BONIN).
TERRI F. LOVE, Judge.
This appeal arises from the sale of land to the plaintiff, who later discovered that the land was allegedly contaminated with radioactive material. The plaintiff sought relief against the former landowners and the oil and trucking companies allegedly responsible for the contamination. The trial court granted the oil and trucking companies' exceptions of no right of action. We find that the trial court did not err, as the plaintiff has no right of action against the oil and trucking companies and affirm.

FACTUAL BACKGROUND AND PROCEDURAL HISTORY
On April 22, 1988, Eagle Pipe and Supply, Inc. ("Eagle") purchased property in Lafayette Parish, Louisiana from Robert Bridges, Patsy Tremble Bridges, and Edmund J. Baudoin, Jr. Union Pipe[1] allegedly leased the land from 1981 to 1988, and operated an industrial pipeyard "that bought, stored, and sold used oilfield tubing." Following an alleged field interview performed by the Louisiana Department of Environmental Quality ("LDEQ"), Eagle allegedly discovered that the land was contaminated with Technologically Enhanced Naturally Occurring Radioactive Materials ("TENORM"). The LDEQ found Eagle in violation of TENORM exposure regulations and allegedly ordered remediation.[2]
After the alleged LDEQ actions, Eagle filed a petition for damages against four groups of defendants. First, Eagle sued a group of oil company defendants that it claims "either sold or tendered to Union Pipe used oil field equipment for cleaning or maintenance, which at all pertinent times contained hazardous, toxic, and carcinogenic radioactive materials."[3] Second, Eagle alleged that the previous landowners, Mr. and Mrs. Bridges and Mr. Baudoin, "leased the property to Union Pipe, a pipe cleaning facility, which operated on the property" and that "[f]rom 1981 to 1988, Union Pipe bought, cleaned, inspected, handled, and stored a large number of pipe." Third, Eagle avers that the transporter defendants transported TENORM contaminated pipe to the property and *432 "conspired with all other defendants to commit acts that caused petitioner's damages."[4] Finally, Eagle sued ABC Insurance Company, Inc. as an alleged insurer liable for Eagle's damages.
Several defendants filed declinatory, dilatory, and peremptory exceptions. The trial court ruled on the exceptions following a hearing. However, the trial court's rulings granting the exception of no right of action,[5] dismissing Eagle's claims with prejudice, and denying motions based on forum non conveniens[6] are the subject matter of the case sub judice. Eagle filed a motion for a new trial, seeking, in part, to amend its petition, which the trial court denied. Eagle's devolutive appeal of the judgment followed. Nine defendants answered Eagle's appeal to preserve their appellate rights of the trial court's denial of forum non conveniens if this Court reversed the exceptions of no right of action.[7] Acme also filed exceptions of no right of action and no cause of action with this Court for the claims Eagle seeks to add by amending its petition.

EXCEPTION OF NO RIGHT OF ACTION
The exception of no right of action is peremptory. La. C.C.P. art. 927. The exception presents a question of law, which requires a de novo review by appellate courts. Hornot v. Cardenas, 06-1341, p. 12 (La.App. 4 Cir. 10/3/07), 968 So.2d 789, 798.
"The function of an exception of no right of action is a determination of whether plaintiff belongs to the class of persons to whom the law grants the cause of action asserted in the petition." Badeaux v. Sw. Computer Bureau, Inc., 05-0612, p. 6 (La.3/17/06), 929 So.2d 1211, 1217. The exception also "serves to question whether the plaintiff in the particular case is a member of the class of persons that has a legal interest in the subject matter of the litigation." Id., 05-0612, pp. 6-7, 929 So.2d at 1217. "Except as otherwise provided by law, an action can be brought only by a person having a real and actual interest which he asserts." La. C.C.P. art. 681. Thus, the question is whether the plaintiff has a right to sue the defendant. Id., 05-0612, p. 6, 929 So.2d at 1217.
The exceptor bears the burden of proof. Carter v. Haygood, 04-0646, p. 8 (La.1/19/05), 892 So.2d 1261, 1267. "[E]vidence is admissible on the trial of an exception of no right of action to `support or controvert any of the objections pleaded, when the grounds therefor do not appear from the petition.'" Indus. Co., Inc. v. Durbin, 02-0665, p. 12 (La.1/28/03), 837 So.2d 1207, 1216, quoting La. C.C.P. art. 931.
*433 Eagle contends that the trial court's judgment was contrary to the law due to an incorrect interpretation of the Louisiana Civil Code and Prados v. S. Cent. Bell Tel. Co., 329 So.2d 744 (La.1976), and that it was a third party beneficiary to the alleged contracts between the oil company defendants and Union Pipe. Eagle also contends that its motion for new trial should have been granted because it was not given an opportunity to amend the petition, pursuant to La. C.C.P. art. 934.

ALLEGED TORTIOUS LIABILITY
Eagle avers that the trial court erroneously permitted the defendants to profit by "hiding" their alleged tortious actions. Citing La. C.C. art. 2315, Eagle complains that it is a "damaged" party, but that a cause of action based on its damages did not accrue until the LDEQ allegedly notified Eagle of the alleged contamination. Eagle alleges that it paid fair market value for the land and should be able to sue the defendants because it was allegedly unaware of the alleged TENORM contamination. Therefore, Eagle contends that it is the proper party to file suit, as the former land owners allegedly suffered no damage.
"[A] buyer is presumed to know the overt condition of the property and to take that condition into account in agreeing to the sales price." Prados v. S. Cent. Bell Tel. Co., 329 So.2d 744, 751 (La.1976). "The general Louisiana rule is that a purchaser cannot recover from a third party for property damage inflicted prior to the sale." St. Jude Med. Office Bldg. Ltd. P'ship v. City Glass and Mirror, Inc., 619 So.2d 529, 530 (La.1993).
Damages to the owner of the land occurring prior to the sale of land are personal to the owner and are not recoverable by the new owner without an express subrogation. Bradford v. Same, 16 So. 487, 488 (La.1894). "[T]he landowner at the time of the alleged damages is the person with the real and actual interest to assert the claim for damages to the land." Dorvin Land Co. v. Parish of Jefferson, 469 So.2d 1011, 1013 (La.App. 5th Cir.1985). This personal right "is not transferred by a mere transfer of the title to the land," but "a specific assignment of the right." Id. "Thus, a claim for damages, whether it arises under a predial lease or a mineral lease, is a personal right which must be specifically assigned to run with the property." LeJeune Bros., Inc. v. Goodrich Petroleum Co., 06-1557, p. 13 (La.App. 3 Cir. 11/28/07), 981 So.2d 23, 32.
Eagle contends that the sale included a "full subrogation" to all of the rights of the previous property owners because the act of sale included the following language:
for the consideration hereinafter mentioned they do by these presents sell, transfer and deliver, with full guarantee of title and free from all encumbrances, and with subrogation to all their rights and action of warranty against previous owners.
However, this is the same language the Louisiana Supreme Court examined and held was not a valid assignment in Prados. 329 So.2d at 749-50. The subrogation clause does not mention the assignment of alleged rights the previous landowners possessed pursuant to the alleged expired leases or an assignment of rights as to seeking damages for any alleged previous damage to the property. Therefore, we do not find that the clause constitutes an express assignment of the previous landowners' personal right to seek damages for the alleged contamination of the property. Neither Prados nor Lejeune created an assignment of rights exception for allegedly unknown damages and Eagle failed to cite a jurisprudential basis for its proposed hidden tort exception.
*434 Eagle asserts that Hopewell, Inc. v. Mobil Oil Co., 00-3280 (La.2/9/01), 784 So.2d 653, provides a right of action against the defendants. However, Hopewell did not change the established law. Hopewell simply stated that Prados involved "rights arising under a lease and" was "distinguishable from the instant facts." Id. The Louisiana Supreme Court reversed and remanded the matter. Id. There are no subsequent state court decisions asserting that the Hopewell reversal changed the substance of Louisiana law. Eagle also stated that "it is clear that under Hopewell, a defendant should not be allowed to profit from its tortious behavior simply because it hid its actions well." However, this statement is not contained in Hopewell. Thus, we find no merit in Eagle's assertion.
Finally, Eagle suggests that an exception to Louisiana's general rule should apply because it was allegedly unaware of the alleged TENORM contamination. Eagle alleges that an exception "arises when the entry or taking of the land is in the nature of a trespass." McCutchen v. Texas & P. Ry. Co., 118 La. 436, 43 So. 42, 43 (1907). McCutchen concerns an owner who acquiesced in the alleged actions of trespass. Id. We do not find that the alleged exception applies to the record; therefore, the argument lacks merit.

THIRD-PARTY BENEFICIARY
Eagle asserts that it possesses "an independent cause of action for recovery under a contract." Further, Eagle contends that the oil company defendants "were contractually obligated to inform Union Pipe of any known health hazards that could have resulted from pipeyard cleaning." Thus, Eagle avers that it was a third-party beneficiary to the contracts allegedly signed by the oil company defendants and Union Pipe.
"A contracting party may stipulate a benefit for a third person called a third party beneficiary." La. C.C. art. 1978. "The stipulation gives the third party beneficiary the right to demand performance from the promisor." La. C.C. art. 1981. "A stipulation pour autrui is never presumed." Smith v. State Farm Ins. Co., 03-1580, pp. 4-5 (La.App. 4 Cir. 3/3/04), 869 So.2d 909, 912-13. "[T]he intent of the contracting parties to stipulate a benefit in favor of a third-party must be made manifestly clear." Id., 03-1580, p. 5, 869 So.2d at 912-13. Additionally, the alleged benefit cannot be "merely incidental to the contract." Id., 03-1580, p. 5, 869 So.2d at 913. The party asserting the benefit "bears the burden of proving the existence of this obligation." Id.
The only alleged evidence of a stipulation pour autri is the allegations contained in Eagle's petition. Eagle did not identify a contract or contracts to which it asserts establish its alleged third-party beneficiary status.[8] Furthermore, the allegations contained in the petition regarding alleged breaches of duty like informing Union Pipe of "any known health hazards that could have resulted from pipeyard cleaning" are alleged benefits incidental to the alleged contracts. Even if the alleged contracts contained clauses requiring the oil company defendants to repair the land, the right of action would have inured to the previous landowners and these alleged rights were not assigned to Eagle. Finally, a stipulation pour autri cannot be presumed. Therefore, we find this argument lacks merit, as Eagle has not shown it is a third-party beneficiary.

*435 LA. C.C.P. ART. 934

Eagle avers that the trial court erred in denying its motion for new trial because it should have been granted leave to amend its petition pursuant to La. C.C.P. art. 934. The trial court is vested with great discretion to determine whether a new trial should be granted. Martin v. Heritage Manor S. Nursing Home, 00-1023, p. (La.4/03/01), 784 So.2d 627, 632.
The Louisiana Code of Civil Procedure states that:
[w]hen the grounds of the objection pleaded by the peremptory exception may be removed by amendment of the petition, the judgment sustaining the exception shall order such amendment within the delay allowed by the court. If the grounds of the objection raised through the exception cannot be so removed, or if the plaintiff fails to comply with the order to amend, the action, claim, demand, issue, or theory shall be dismissed.
La. C.C.P. art. 934. The adverse party must "be given an opportunity to amend where there is a conceivable possibility that a cause of action may be stated." Alexander and Alexander, Inc. v. State, Div. of Admin., 486 So.2d 95, 100 (La. 1986). "However, the right to amend is not so absolute as to permit the same when such amendment would constitute a vain and useless act." Id.
"[T]he decision to permit an amendment is within the sound discretion of the trial court and, therefore, will not be disturbed absent a showing of manifest error or abuse of discretion." Massiha v. Beahm, 07-0137, p. 4 (La.App. 4 Cir. 8/15/07), 966 So.2d 87, 89. Amendments to a petition that change the substance of the original claims are not permitted. Fortier v. Hughes, S.T.D., 09-0180, p. 5 (La.App. 4 Cir. 6/17/09), 15 So.3d 1185, 1188. Where the plaintiff sought to amend adding other causes of action, the trial court did not abuse its discretion by denying the plaintiff leave to amend. Massiha, 07-0137, pp. 6-7, 966 So.2d at 90-91. A party is not permitted "to go on a fishing expedition in the mere hope that he might find something of substance to overcome the objection raised by the peremptory exception." Gates v. Hanover Ins. Co., 218 So.2d 648, 653 (La.App. 4th Cir.1969). "Therefore, in the absence of a showing of manifest error or an abuse of discretion in finding that the grounds `cannot' be removed by amendment, the court's judgment should not be disturbed." Id., 218 So.2d at 652.
Eagle asserts that it has a claim for damages arising from trespass, a claim for unjust enrichment, and claims pursuant to the Louisiana Environmental Quality Act. These represent new causes of action instead of curative amendments. La. C.C.P. art. 934 is intended to cure allegations and causes of action asserted in the original petition. Furthermore, Eagle specifically stated in its petition that: "[p]etitioner makes no claim herein under the Conservation Act; Louisiana Revised Statute 30:1, et seq.; or the Louisiana Environmental Quality Act, Louisiana Revised Statute 30:2001 et seq." There are no facts to cure the causes of action alleged in the petition because the causes of action pertain to alleged damages to the land prior to Eagle's ownership and Eagle lacks an assignment of rights. Therefore, we find that the trial court did not abuse its vast discretion in denying Eagle's motion for new trial, which sought leave to amend.

ACME'S EXCEPTIONS WITH THIS COURT
Because we find that the trial court did not abuse its discretion by denying Eagle leave to amend its petition pursuant to La. C.C.P. art. 934, Acme's exceptions raised with this Court are moot.

*436 DECREE

For the above mentioned reasons, we find that the trial court did not err and affirm.
AFFIRMED.
BONIN, J., Dissents with Reasons.
BONIN, J., Dissents with Reasons.
I respectfully dissent.
The cause of action stated by Eagle, the plaintiff, is that the excepting defendants, whether oil companies or transportation companies, secretly and covertly contaminated immovable property now owned by Eagle with technologically enhanced naturally occurring radioactive materials, or TENORM. See Grefer v. Alpha Technical, 02-1237 (La.App. 4 Cir. 3/31/05), 901 So.2d 1117, rev'd sub nom. Exxon Mobil Corp. v. Grefer, 549 U.S. 1249, 127 S.Ct. 1371, 167 L.Ed.2d 156 (2007); Pollard v. Alpha Technical, Inc., 08-1486 (La.App. 4 Cir. 1/28/10), 31 So.3d 576; also see, generally, James R. Cox, Naturally Occurring Radioactive Materials in the Oil Field: Changing the NORM, 67 Tul. L.R. 1197 (1993). The contamination from these toxic materials did not manifest itself until the Louisiana Department of Environmental Quality, after the sale to Eagle, tested the property and reported the presence of TENORM necessitating remediation of the site. The excepting defendants do not challenge that Eagle has stated a cause of action for the environmental pollution of the land, but through the exception of no right of action challenge whether there is any "right" or "interest" in Eagle instituting the suit. See La. C.C.P. art. 927 A(6).
The sole basis for the challenge is the uncontested fact that Eagle only acquired the immovable property after the contaminating acts, if not effects, of the defendants had discontinued and that the acquisition was without an express reservation of rights, subrogation, or assignment to Eagle from its vendor. See, e.g., Prados v. South Central Bell Telephone Company, 329 So.2d 744 (La.1975) (on rehearing). The excepting defendants do not contend that the contamination was known or reasonably knowable by Eagle prior to its purchase of the property. Thus, accepting the allegations of the petition as true, the damage from the excepting defendants' delict(s) was sustained after the purchase. See Cole v. Celotex Corporation, 620 So.2d 1154, 1156 (La.1993).
La. C.C. art. 2315 A provides: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." The damage was caused to Eagle and Eagle most assuredly has a right or interest in bringing this lawsuit to recover its damages.
The majority errs when it relies upon several clearly distinguishable cases to affirm the district court and sustain the exception of no right of action. In Prados v. South Central Bell Telephone Company, supra (concrete buildings), St. Jude Medical Office Bldg. Ltd. Part. v. City Glass and Mirror, Inc., 619 So.2d 529, 530 (La. 1993) (defective windows), and Dorvin Land Corporation v. Parish of Jefferson, 469 So.2d 1011 (dredging spoil dumped), the damage to the subject properties was sustained by the vendors and was overt and obvious at the time of the sale.[1] Moreover, the majority errs in its reliance upon Prados v. South Central Bell Telephone Company, supra, and LeJeune Bros., Inc. v. Goodrich Petroleum Co., L.L.C., 06-1557 (La.App. 3 Cir. 11/28/07), *437 981 So.2d 23, both of which "involve[] rights arising under a lease and [are] distinguishable from the instant facts." Hopewell, Inc. v. Mobil Oil Company, 00-3280 (La.2/9/01), 784 So.2d 653 (per curiam). In Hopewell the purchaser contended that, through oil and gas operations, hazardous and toxic wastes were deposited in the ground and asserted that the oil company had a duty to restore the property, which duty extended to subsequent landowners. See Hopewell, Inc. v. Mobil Oil Company, 33,774 (La.App. 2 Cir. 11/1/00), 770 So.2d 874, 876. The second circuit, like the majority today, concluded that Prados v. South Central Bell Telephone Company requires sustaining the exception of no right of action. But the Louisiana Supreme Court, rejecting that authority and reasoning, reversed the second circuit and reinstated the trial court's ruling denying the exception of no cause of action. Hopewell, Inc. v. Mobil Oil Company, 00-3280 (La.2/9/01), 784 So.2d 653 (per curiam).
In my view, Eagle has a right of action against the excepting defendants on account of their contaminating its land. The trial court erred when it sustained the exception and dismissed Eagle's suit against them. I would reverse and, therefore, respectfully dissent.

ORDER
Considering the Application for Rehearing filed in the above captioned matter and pursuant to La.Const. Art. V, § 8(B), it is ordered that this matter is set for oral argument on Tuesday, May 11, 2010, at 11:00 a.m.

ON REHEARING GRANTED
(Court composed of Judge TERRI F. LOVE, Judge MAX N. TOBIAS, JR., Judge DAVID S. GORBATY, Judge EDWIN A. LOMBARD, Judge PAUL A. BONIN).
PAUL A. BONIN, Judge.
We granted rehearing in this matter and assigned the rehearing to a five-judge panel constituted pursuant to La. Const. art. V, § 8. Because we conclude that our original decision is in error, we vacate that opinion. Eagle Pipe and Supply, Inc. v. Amerada Hess Corp., 09-0298 (La.App. 4 Cir. 2/10/10), 47 So.3d 428, 2010 WL 487238. We decide today that because Eagle Pipe and Supply, Inc. is a party that sustained injury allegedly caused by the exceptors,[1] the district court erred in granting the exception of no right of action and explain our decision in Part II.
On account of our conclusion that Eagle Pipe has a right of action, we must now for the first time also consider the appeal of the district court's rulings denying the exception of improper venue[2] and the motion to transfer on the grounds of forum non conveniens.[3] Because we find from our review of the record regarding the exception of improper venue that the trial court's ruling was correct and because we find no abuse of discretion in the denial of *438 the motion to transfer, we affirm the district court rulings and explain in greater detail in Part III.
We finally, but briefly, here consider the exception of no cause of action filed in this court by several of the defendants.[4]See La. C.C.P. arts. 927 A(5) and 928 B (providing in part, "[t]he peremptory exception may be pleaded at any stage of the proceeding prior to submission of the case for a decision"). Because the district court had ruled previously in the judgment before us that Eagle Pipe would be allowed to amend its pleadings to clarify its allegations against these exceptors, we defer a ruling on the exception. See La. C.C.P. arts. 926 A(5), 932 A, and 934. If, on remand, Eagle Pipe does not timely amend its petition or, if timely amended, the amendment does not satisfy the objections of the exceptors either with respect to vagueness or to failure to state a cause of action, the exceptions can be re-urged in the district court.

I
Eagle Pipe purchased immovable property in Lafayette Parish for its fair market value on April 22, 1988.[5] Before the sale, the property had been leased to Union Pipe, Inc., which operated a pipe yard for the purpose of buying, cleaning, storing, and selling used oilfield tubing. According to the petition,[6] during the cleaning process, radioactive scale fell from the tubing and was deposited onto the surface of the pipe yard, thereby contaminating the soil. During that period numerous oil companies sold or tendered to Union Pipe used oil field equipment for cleaning and maintenance; this equipment also contained hazardous, toxic, and carcinogenic radioactive materials. Union Pipe's lease had terminated and its activities on the property had ceased by the time of the sale in 1988.
Some years after the sale and just before this suit was filed in July 2008, as a result of testing by the Louisiana Department of Environmental Quality (LDEQ), Eagle Pipe discovered that the property had been contaminated with technologically enhanced naturally occurring radioactive materials (TENORM).[7] Not only did LDEQ notify Eagle Pipe of the discovery, but it ordered Eagle Pipe to remediate the property pursuant to the authority of La. R.S. 30:2276. Eagle Pipe brought suit *439 against a number of defendants who are allegedly responsible for the contamination, including numerous oil companies which had sold used equipment to Union Pipe[8] as well as numerous transporters who had delivered the equipment to the property.[9]

II
The exception of no right of action is peremptory. La. C.C.P. art. 927 A(6). The sole basis for the objection is the uncontested fact that Eagle Pipe only acquired the property after the contaminating acts, if not effects, of the defendants had discontinued and that the acquisition was without an express reservation of rights, subrogation, or assignment to Eagle Pipe from its vendor. See, e.g., Prados v. South Central Bell Telephone Company, 329 So.2d 744 (La.1975) (on rehearing). The excepting defendants do not contend that the contamination was known or reasonably knowable by Eagle Pipe prior to its purchase of the property. The trial court decided as a matter of law that Eagle Pipe possessed no right of action for contamination of its property because the contamination occurred under a lease prior to purchase, and thus created a personal (as opposed to real) right that the former owners did not expressly assign to Eagle Pipe. The trial court concluded that, because Eagle Pipe did not acquire an expressed subrogation of its vendors' rights against their lessee, Union Pipe, it had no right of action. Because the grant of this exception presents a question of law, we review it de novo. Hornot v. Cardenas, 06-1341, p. 12 (La.App. 4 Cir. 10/3/07), 968 So.2d 789, 798.

A
The exception of no right of action must be granted when the party bringing suit cannot assert a real and actual interest. See La. C.C.P. art. 681 ("[e]xcept as otherwise provided by law, an action can be brought only by a person having a real and actual interest which he asserts"). The exceptor bears the burden of proof, Carter v. Haygood, 04-0646, p. 8 (La.1/19/05), 892 So.2d 1261, 1267, and may introduce evidence to support or controvert any of the objections pleaded. Indus. Co., Inc. v. Durbin, 02-0665, p. 12 (La.1/28/03), 837 So.2d 1207, 1216, quoting La. C.C.P. art. 931. As we earlier noted, the facts stated in the petition were not controverted in the lower court.
Right of action concerns only whether the plaintiff "belongs to the particular class in whose exclusive favor the law extends the remedy," Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1060, 1095-96, 262 So.2d 328, 333-34 (La.1972) quoting McMahon, The Exception of No Cause of Action in Louisiana, 9 Tul. L.Rev. 17, 29-30, and does not take into account whether the remedy can be exercised against a particular defendant. Babineaux, 262 So.2d at 334.
The trial court's ruling relies upon a rule announced in Prados, which was followed in St. Jude Med. Office Bldg. Ltd. P'ship v. *440 City Glass and Mirror, Inc., 619 So.2d 529, 530 (La.1993). The trial court, and the exceptors here, understand that rule to comprehensively provide that "a purchaser cannot recover from a third party for damage to the property incurred prior to sale." Prados, 329 So.2d at 750. Such a rule would preclude, of course, a right of action on the part of Eagle Pipe. We, however, conclude that these decisions bear closer examination of their facts in order to decide whether they do after all preclude a right of action by Eagle Pipe against the parties before our court.
While there is no question that Eagle Pipe's vendors were the lessors of Union Pipe before the sale, and that Union Pipe's lease terminated prior to the sale, Eagle Pipe's claims against the oil companies and transporters do not arise from Union Pipe's activities as a lessee qua lessee.[10] The explicit holding of Prados on rehearing is "that the present owner has no right to recover damages against the former lessee." Prados, 329 So.2d at 751 (emphasis supplied). But Prados like LeJeune Bros., Inc. v. Goodrich Petroleum Co., L.L.C., 06-1557 (La.App. 3 Cir. 11/28/07), 981 So.2d 23, "involve[] rights arising under a lease and [are] distinguishable from the instant facts." Hopewell, Inc. v. Mobil Oil Company, 00-3280 (La.2/9/01), 784 So.2d 653, 653 (per curiam). In Hopewell the purchaser contended that, through oil and gas operations, hazardous and toxic wastes were deposited in the ground and asserted that the oil company had a duty to restore the property, which duty extended to subsequent landowners. See Hopewell, Inc. v. Mobil Oil Company, 33,774 (La.App. 2 Cir. 11/1/00), 770 So.2d 874, 876. The second circuit concluded that Prados requires sustaining the exception of no right of action. But the Louisiana Supreme Court, rejecting that authority and reasoning, reversed the second circuit and reinstated the trial court's ruling denying the exception of no right of action. Id.
We understand the Supreme Court's decision in Hopewell to make this same important distinction which we now make: that Prados is limited to actions by a subsequent purchaser against a former lessee arising out of the terminated lease. Notably, the cases cited by the defendants to support the application of this rule relied upon by the trial court all involve causes of action arising under leases.
Moreover, the decision in Prados relied upon the rule that "a buyer is presumed to know the overt condition of the property and to take that condition into account in agreeing to the sale price." Prados, 329 So.2d at 751. This is a sound rule, but one not applicable to the facts of this case. First, the TENORM contamination is hidden, not overt.[11] In Prados the lessee had left standing concrete buildings; they surely were not hidden. Likewise, in other decisions relied upon by the trial court and the exceptors, the property's condition was not hidden, including, for example, in St. Jude Medical Office Bldg. Ltd. P'ship v. City Glass and Mirror, Inc., 619 So.2d 529, 530 (La.1993), which involved defective windows, and Dorvin Land Corporation v. Parish of Jefferson, 469 So.2d 1011 (La.App. 5th Cir.1985), which involved dumped dredging soil. The damage to the subject properties was sustained by the vendors and was overt and obvious at the *441 time of the sale.[12] Second, Eagle Pipe paid full market value, not a discounted price, because the true condition of the property was not yet discovered or discoverable.
While the rule of law announced in Prados is a sound rule, it is limited to its dispositive facts and we, therefore, conclude that Prados is not controlling in this case which does not involve a lease and does not involve an overt condition of property.

B
The general rule regarding the assertion of a real and actual interest is contained in La. C.C. art. 2315 A: "Every act whatever of man that causes damage to another obliges him by whose fault it happened to repair it." The complex factual background of the current case, involving the subsequent purchase of property with a hidden defect, does not present sufficient reason to depart from the fundamental principles of injury and reparation. Since as early as 1851, the Louisiana Supreme Court understood reparation thus: "reparation must be made to him who suffered the injury." Clark v. Warner, 6 La. Ann. 408, 408 (La.1851) ("but as to damages actually suffered before the purchase, we know of no other principles governing the case than those referrable to this general provision of the code, that `every act of man that causes damage to another obliges him by whose fault it happened to repair it.' It is a mere corollary, that the reparation must be made to him who suffered the injury"). See also, Bradford v. Richard, 46 La. Ann. 1530, 16 So. 487 (La.1894) (quoting Clark, supra, at 408).
The injury is not dispelled by a subsequent purchase, and therefore we see no reason why the right to seek remedy for it should be. The injured party should not be precluded from seeking reparation merely because the damage remained hidden long enough for the property to be sold. In such cases, injury is deemed to occur when the damage is, or should have been[13], discovered. See, e.g., Ricks v. Kentwood Oil Co., Inc., 09-0677 (La.App. 1 Cir. 2/23/10), 38 So.3d 363 ("triggering event" for coverage of emotional and mental distress damages was date of discovery, as opposed to date of harmful conduct, where test of well's water indicated presence of toxic substances from non-overt gasoline leak caused by oil company's underground storage unit); Rando v. Top Notch Properties, L.L.C., 03-1800 (La.App. 4 Cir. 6/2/04), 879 So.2d 821 (manifestation rule on trigger of coverage under liability policy applied to claim for structural defects in house resulting from faulty pile-driving); Oxner v. Montgomery, 34,727 (La.App. 2 Cir. 8/1/01), 794 So.2d 86 (claim for damage from improper construction of house was triggered when the damage to the house manifested itself, rather than when the negligence occurred); James Pest Control, Inc. v. Scottsdale Ins. Co., 99-1316 (La.App. 5 Cir. 6/27/00), 765 So.2d 485 (the effects of termite infestation did not become "damage" until discovery by homeowners).
*442 Eagle Pipe has lost the use of its land and will incur the cost of remediating the property; its property has clearly been damaged by the depositing of radioactive materials. The oil companies and transporters, if deemed responsible, are therefore obliged to make reparations to "him who suffered the injury." Clark, supra, at 408. As a party "who suffered [an] injury," Eagle Pipe enjoys a right of action.

C
Therefore, applying La. C.C. art. 2315 and the Clark line of cases, we hold that: (1) the manifestation of radioactive contamination allegedly caused by defendants constitutes an injury giving rise to a legitimate cause of action; (2) the previous owners sustained no injury through the sale of the land because they allegedly received full value for their interest as if it were uncontaminated; (3) Eagle Pipe is an injured party because the damage manifested itself after Eagle Pipe's purchase of the land, thus devaluing Eagle Pipe's acquisition and requiring its remediation, and (4) as an injured party, Eagle Pipe is deserving of reparation.
Therefore, for the foregoing reasons, we vacate our previous holding and we reverse the trial court's sustaining of the exception of no right of action.

III
We turn in this Part to a discussion of our decision regarding, first, the exception of improper venue and, second, the motion to transfer on the ground of forum non conveniens. Although some of the exceptors had prevailed in the lower court and the lawsuit as to them had been ordered dismissed, they nonetheless answered Eagle Pipe's appeal to preserve their right to appellate review on the issues of venue and forum non conveniens in this court in the event that the trial court was reversed. See La. C.C.P. art. 2133 A.

A
Chevron and OXY objected that Orleans Parish is a not a "parish where an action may properly be brought [against them] and tried under the rules regulating the subject." La. C.C.P. art. 41. "A foreign corporation . . . licensed to do business in this state shall be brought in the parish where its primary business office is located as designated in its application to do business in the state. . . ." Chevron, a licensed foreign corporation, argues that by letter to the Secretary of State dated July 15, 2008 it changed its principal place of business from Orleans Parish to St. Tammany Parish. Coincidentally, this is the same day on which this lawsuit was filed by Eagle Pipe. "[V]enue is determined at the time that suit is filed." Thompson v. Prudential Property and Casualty Inc. Co., 562 So.2d 34, 35 (La.App. 4th Cir.1990).
While La. R.S. 12:308 B, the statute concerning changes of principal place of business, registered address, and registered agent, is silent concerning when a change in the location of a principal place of business becomes effective, it does explicitly state that a change of registered address or registered agent becomes effective once it is filed with the Secretary of State. But in Wells v. R.J. Marchand Contractors Specialties, Inc., 94-2156 (La. App. 4 Cir. 5/16/95), 655 So.2d 800, 803, we stated that the "plaintiff is entitled to rely on the information contained in public records which indicated at the time plaintiff filed his suit that the defendant corporation['s] principal business establishment was located in Orleans Parish." (emphasis supplied). Chevron's letter was not received by the Secretary of State until July 17, 2008, and it was not recorded *443 until September 2008. According to public records available on July 15, 2008, when Eagle Pipe filed its suit, Chevron's principal place of business was located in Orleans Parish. Therefore, the trial judge was correct in finding that Orleans Parish is a parish of proper venue as to Chevron.
With respect to the objection lodged by OXY, it too was correctly overruled. Eagle Pipe asserts that OXY is jointly liable with Chevron and others for its damages. See La. Civil Code art. 2324 B. Because venue is proper under La. C.C.P. art. 42(4) as to a joint obligor, Orleans Parish is a parish of proper venue as to all joint obligors, including OXY. See La. C.C.P. art. 73 A.
Accordingly, the district court's overruling of the exception for improper venue is affirmed.

B
Chevron, OXY, Exxon, Shell, Kerr-McGee, Hess, Berry, and Patterson contradictorily moved to transfer the lawsuit from Orleans Parish to Lafayette Parish "[f]or the convenience of the parties and the witnesses, in the interest of justice. . ." La. C.C.P. art. 123 A. The parties agree that, because the property at issue, the alleged damage, and a plurality of the defendants are all located in Lafayette Parish, suit could have been properly brought there. But the district court is given great deference in ruling on a motion for forum non conveniens; the ruling should be affirmed absent an abuse of discretion. Martinez v. Marlow Trading, S.A., 04-0538 (La.App. 4 Cir. 2/2/05), 894 So.2d 1222; Boudreaux v. Able Supply Co., 08-1350 (La.App. 3 Cir. 10/7/09), 19 So.3d 1263.
Ruling on a forum non conveniens claim, a court takes into account the following private interest factors: (1) convenience of the parties and witnesses; (2) access to the sources of proof, as well as viewing of the premises if appropriate; (3) the cost of obtaining attendance of witnesses; and (4) advantages and obstacles to a fair trial. Gulf Oil Corp. v. Gilbert, 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947); Martinez, supra, at 1226. Accordingly, we find no abuse of discretion in this case where the moving parties have not shown that (1) trying the suit in Orleans Parish rather than Lafayette Parish would be more inconvenient to the parties or witnesses, (2) that access to sources of proof or the premises will be impeded, (3) the cost of obtaining witnesses would be increased, or (4) Orleans Parish courts would present obstacles to a fair trial. Therefore, we affirm the trial court's denial of the motion to transfer this matter to Lafayette Parish.

DECREE
We reverse the judgment of the district court insofar as it dismissed with prejudice Eagle Pipe and Supply, Inc.'s lawsuit against the parties before us on this appeal. We affirm the district court's judgment insofar as it denied the exception of improper venue and denied the motion to transfer on the grounds of forum non conveniens. We defer ruling on the exception of no cause of action filed in this court and refer the exception to the district court after the petition is timely amended. Accordingly, we remand this matter to the district court for further proceedings consistent with this decision.
REVERSED IN PART; AFFIRMED IN PART, AND REMANDED.
TOBIAS, J., concurs with reasons.
LOVE, J., dissents with reasons.
*444 TOBIAS, J., Concurs and Assigns Reasons.
I respectfully concur in order to assign additional reasons in support of the majority's opinion.
As the Louisiana Supreme Court stated in Babineaux v. Pernie-Bailey Drilling Co., 261 La. 1060, 1095-96, 262 So.2d 328, 333-34 (1972),
There has been much discussion about the purpose of the exception of no right of action, and many attempts to differentiate that exception from the exception of no cause of action. One of the best statements of the definition of no right of action and of the basis of the distinction between it and no cause of action was given by the late Henry George McMahon: `The former (no cause of action) is used to raise the issue as to whether the law affords a remedy to anyone for the particular grievance alleged by plaintiff; the latter (no right of action) is employed (in cases where the law affords a remedy) to raise the question as to whether plaintiff belongs to the particular class in whose exclusive favor the law extends the remedy, or to raise the issue as to whether plaintiff has the right to invoke a remedy which the law extends only conditionally.' McMahon, The Exception of No Cause of Action in Louisiana, 9 Tul.L.Rev. 17, 29-30. See also McMahon, Parties Litigant in Louisiana, 11 Tul.L.Rev. 529-30. The exception of no right of action, however, cannot be invoked to determine whether a particular defendant can stand in judgment in a particular case, i.e., whether the right or remedy can be exercised against that defendant. [Footnote omitted; emphasis supplied.]
In my view, the plaintiff/appellant, Eagle Pipe and Supply, Inc. ("Eagle"), has an interest in asserting that one or more of the defendants may have negligently caused damage to the property before it was acquired. Ever since federal law permitted the United States Environmental Protection Agency ("EPA") to force any person in the chain of title to immovable property or who contaminated immovable property to remediate the contamination, such as NORM or TENORM, and Louisiana state law allowed the Louisiana Department of Environmental Quality to protect Louisiana's environment from contamination, Eagle concomitantly should have a right to seek a redress in our courts against those who cause environmental damage. La. C.C. art. 2315; La. Rev.Stat. Title 30, Subtitles I and II; La. Rev.Stat. 30:2271, et seq.; La.Rev.Stat. 30:2285, et seq.; Comprehensive Environmental Response, Compensation, and Liability Act of 1980, 42 U.S.C. §§ 9601, et seq., as amended by Superfund Amendments and Reauthorization Act of 1986, Pub.L. No. 99-499 (1986).
Additionally, Eagle should be able to assert a claim against a person causing damage to its immovable property to remediate the damage; although that claim has not yet been made, the plaintiff should be allowed to amend its petition to do so.
As noted in Grefer v. Alpha Technical, 02-1237 (La.App. 4 Cir. 3/31/05), 901 So.2d 1117,
In 1981, in a routine well logging operation on two Occidental Petroleum Corporation platforms in the North Sea, drillers registered elevated levels of radioactivity from the radioactive scale in equipment on the platforms and the tubing in the well holes. The levels of radiation required Occidental to report the discovery to U.K. governmental authorities. The National Radiological Protection Board ("NRPB"), under contract to the U.K. government, did further testing *445 and identified the radioactive component as radium-226, in the form of radium sulfate, co-precipitated with barium sulfate, calcium sulfate, and strontium sulfate. Radium-226 has a half-life of approximately 1,600 years.
All major oil companies operating in the North Sea, including Exxon, were immediately made aware of Occidental's discovery through the United Kingdom Offshore Operators Association ("UKOOA"), the oil industry trade association. As a result of the discovery, the U.K. Government held a major conference in 1983 for the oil companies dedicated solely to the NORM problem. In 1985, the UKOOA Safety Committee published NORM safety guidelines and a NORM Reference Manual, which were distributed to all oil companies.
On April 10, 1986, Chevron identified radium-226 in oilfield equipment at a well site near Brookhaven, Mississippi. As a result of Chevron's discovery, Exxon conducted surveys at four Exxon Mississippi well sites in June 1986 and found radium-226 at those sites. Later that month, Exxon representatives met with other oil company representatives at the Alabama/Mississippi Mid-Continent Oil & Gas Association meeting to discuss the radioactive scale problem. Following the meeting, Exxon industrial hygienist, Mr. Lindsay Booher, reported to Mr. M.F. Terrell, a production manager for Exxon's Eastern Division, which covered Louisiana, Mississippi, Alabama, and Florida, advising him what he had found. In a letter dated June 19, 1986, Mr. Booher informed Mr. Terrell that where oilfield equipment was opened up for maintenance, inspection, and cleaning, there would be a human health concern, and if equipment contaminated with radioactive scale was turned over to contractors for cleaning, those contractors had to be notified of the presence of radioactivity. ITCO [the company cleaning pipe on the Grefers' immovable property] was Exxon's main cleaning contractor. Over the next several months, Exxon prepared a videotape and a letter advising cleaning contractors of the NORM problem and how to manage it.
Id., pp. 3-5, 901 So.2d at 1125 [footnotes omitted].
Although the appellees assert that Eagle was a sophisticated purchaser, what Eagle knew and when it knew about the existence of NORM is a question of fact not addressed on an exception of no right on action.[1] If Eagle knew of the potential problems associated with NORM on 22 April 1988, the date it purchased the property, it could have obtained a subrogation of rights from its vendors against any person who contaminated the property. In such an instance, I would agree with the dissent that the exception of no "right" of action should be maintained, although I would allow Eagle to amend its petition to state a "right"[2] of action. See Prados v. So. Cen. Bell Tel. Co., 329 So.2d 744 (La. 1975) and Hopewell v. Mobil Oil Co., 33,774 *446 (La.App. 2 Cir. 11/1/00), 770 So.2d 874, reversed 00-3280 (La.2/9/01), 784 So.2d 653; Babineaux, supra.
Because of the EPA's right to seek remediation of the NORM from the former property owners and those who contaminated the immovable property, Eagle should likewise have that right and also a right to claim damages, thereby creating an exception to the general rule of Prado and Hopewell.
LOVE, J., Dissents and Assigns Reasons.
I respectfully dissent from the majority's conclusion that Eagle Pipe has a right of action.
"[A] buyer is presumed to know the overt condition of the property and to take that condition into account in agreeing to the sales price." Prados v. S. Cent. Bell Tel. Co., 329 So.2d 744, 751 (La.1976). "The general Louisiana rule is that a purchaser cannot recover from a third party for property damage inflicted prior to the sale." St. Jude Med. Office Bldg. Ltd. P'ship v. City Glass and Mirror, Inc., 619 So.2d 529, 530 (La.1993); see also Prados, 329 So.2d at 750.
Damages to the owner of the land occurring prior to the sale of land are personal to the owner and are not recoverable by the new owner without an express subrogation. Bradford v. Same, 16 So. 487, 488 (La.1894). "[T]he landowner at the time of the alleged damages is the person with the real and actual interest to assert the claim for damages to the land." Dorvin Land Co. v. Parish of Jefferson, 469 So.2d 1011, 1013 (La.App. 5th Cir.1985). This personal right "is not transferred by a mere transfer of the title to the land," but "a specific assignment of the right." Id.
Eagle contends that the sale included a "full subrogation" to all of the rights of the previous property owners because the act of sale included the following language:
for the consideration hereinafter mentioned they do by these presents sell, transfer and deliver, with full guarantee of title and free from all encumbrances, and with subrogation to all their rights and action of warranty against previous owners.
However, this is the same language the Louisiana Supreme Court examined and held was not a valid assignment in Prados, 329 So.2d at 749-50. The subrogation clause does not mention the assignment of alleged rights the previous landowners possessed pursuant to the alleged expired leases or an assignment of rights as to seeking damages for any alleged previous damage to the property. Therefore, I do not find that the clause constitutes an express assignment of the previous landowners' personal right to seek damages for the alleged contamination of the property.
The majority asserts that Hopewell, Inc. v. Mobil Oil Co., 00-3280 (La.2/9/01), 784 So.2d 653, provides a right of action for Eagle Pipe. However, Hopewell did not change the established law. Hopewell stated that Prados involved "rights arising under a lease and" was "distinguishable from the instant facts." Id. The Louisiana Supreme Court reversed and remanded the matter. Id. There are no subsequent state court decisions asserting that Hopewell changed the substance of Louisiana law. Eagle also stated that "it is clear that under Hopewell, a defendant should not be allowed to profit from its tortious behavior simply because it hid its actions well." However, this statement is not contained in Hopewell. Further, in Frank C. Minvielle, L.L.C. v. IMC Global Operations, Inc., 380 F.Supp.2d 755, 771-72 (W.D.La.2004), the court, regarding Hopewell, stated

*447 [t]he only thing clear about the decision is that the court did not, by its brief reversal, establish a new legal principle. If that had been the court's intent, it easily could have said so in plain terms-i.e. that it was conferring standing upon subsequent landowners to assert tort claims for property damage occurring prior to their acquisition of the land. Nor did the decision alter the rule in Louisiana that the landowner at the time of the alleged damages is the person with the real and actual interest to assert a tort claim involving the property under Gumbel and Dorvin.

The law in Louisiana remains that the owner of land at the time of the alleged damages is the person with the real and actual interest to assert the claim for damages to the land.
Thus, I do not find that the trial court erred in granting the exception of no right of action and would affirm; therefore, I find that the majority's discussion of improper venue, forum non conveniens, and no cause of action are unnecessary.
NOTES
[1] Union Pipe is allegedly no longer a viable entity.
[2] Neither the alleged remediation order, nor remediation plan issued by the LDEQ are included in the record.
[3] The oil company defendants included: Hess Corporation (formerly known as Amerada Hess Corporation) ("Hess"); Chevron, U.S.A., Inc. ("Chevron"); Texaco, Inc. ("Texaco"); Exxon Mobil Corporation ("Exxon"); Kerr-McGee Chemical Worldwide, L.L.C. ("Kerr McGee"); OXY USA, Inc. ("OXY"); Shell Offshore, Inc. ("Shell Offshore"); Shell Oil Company ("Shell Oil"); SWEPI, LP ("SWEPI"); Stone Oil Company of Baton Rouge; and Berry Petroleum Company ("Berry").
[4] The transporter defendants included: Intracoastal Tubular Services, Inc. ("Intracoastal"); Walker Trucking, Inc.; Patterson Truck Line, Inc. ("Patterson"); Packard Truck Lines, Inc. ("Packard"); Acme Truck Lines, Inc. ("Acme"); Ace Transportation, LLC ("Ace"); Dynasty Transportation, LLC ("Dynasty"); Venture Transport Logistics, L.L.C. ("Venture"); and Venture Transport Logistics Holdings, L.L.C. ("Holdings").
[5] Exceptions of no right of action were filed by Exxon, Chevron, Shell Oil, Shell Offshore, SWEPI, Kerr-McGee, Hess, OXY, Berry, Patterson, Ace, Dynasty, Venture, Holdings, Acme, Intracoastal, and Packard. Placid Oil Company also filed an exception of no right of action, but the trial court did not include it in the judgment. OXY was the successor in interest to Placid Oil Company.
[6] Motions based on forum non conveniens were filed by Exxon, Shell Oil, Shell Offshore, SWEPI, Kerr-McGee, Hess, Chevron, Patterson, and Berry.
[7] The defendants that answered the appeal were Shell Oil, Shell Offshore, SWEPI, Berry, Chevron, Hess, Patterson, Exxon, and OXY.
[8] Eagle's petition contained quotations allegedly from contracts by Exxon and Texaco. However, the quotations fail to establish a stipulation pour autri.
[1] I agree with these cases and with the majority that the purchaser of property cannot at the same time purchase a tort from his vendor, the damage from which tort has already been sustained, and is overt, known or reasonably knowable.
[1] The exceptors are: Hess Corporation (formerly known as Amerada Hess Corporation); Chevron, U.S.A., Inc.; Texaco, Inc.; Exxon Mobil Corporation; Kerr-McGee Chemical Worldwide, L.L.C.; OXY USA, Inc.; Shell Offshore, Inc.; Shell Oil Company; SWEPI, LP; Berry Petroleum Company; Intracoastal Tubular Services, Inc.; Patterson Truck Line, Inc.; Packard Truck Lines, Inc.; Acme Truck Lines, Inc.; Ace Transportation, LLC; Dynasty Transportation, LLC; Venture Transport Logistics, L.L.C.; and Venture Transport Logistics Holdings, L.L.C.
[2] Exceptions of improper venue were brought by Chevron and OXY.
[3] Motions to transfer on forum non conveniens were filed by Exxon, OXY, Shell, Kerr-McGee, Hess, Chevron, Patterson, and Berry.
[4] The exception of no cause of action was filed in this court by Acme. Other transporter-defendants referenced the trial court's action on the exception of no cause of action.
[5] The sellers were Robert Bridges, Patsy Trimble Bridges, and Edmund J. Baudoin, Jr., all of whom are named defendants, but whose interests are not before us on this appeal. Eagle Pipe, it should be noted, suggested to us that post-appeal a realignment of interests may have occurred, but because the facts supporting such suggestion were not considered by the trial court, we denied Eagle Pipe's motion to supplement this record.
[6] The source of the recitation of facts in Part I is the petition, which facts the exceptors did not controvert at the hearing on the exception of no right of action. See La. C.C.P. art. 931. See Cole v. Celotex Corporation, 620 So.2d 1154, 1156 (La.1993).
[7] For more extensive information about TENORM, see, generally, James R. Cox, Naturally Occurring Radioactive Materials in the Oil Field: Changing the NORM, 67 Tul. L.R. 1197 (1993); Grefer v. Alpha Technical, 02-1237 (La.App. 4 Cir. 8/8/07), 965 So.2d 511. Although the human senses cannot detect its presence, prolonged exposure to TENORM drastically increases the chances of developing certain diseases such as cancer and has devastating effects on plant and animal life. Cleaning TENORM is both expensive and dangerous. One source of TENORM is the mud that collects against the inside of pipes used for extracting oil and natural gas. When these pipes are cleaned, the mud can contaminate the land it falls onto.
[8] The oil company defendants include: Hess Corporation (formerly known as Amerada Hess Corporation); Chevron, U.S.A., Inc.; Texaco, Inc.; Exxon Mobil Corporation; Kerr-McGee Chemical Worldwide, L.L.C.; OXY USA, Inc.; Shell Offshore, Inc.; Shell Oil Company; SWEPI, LP; Stone Oil Company of Baton Rouge; and Berry Petroleum Company.
[9] The transporter defendants included: Intracoastal Tubular Services, Inc.; Walker Trucking, Inc.; Patterson Truck Line, Inc.; Packard Truck Lines, Inc.; Acme Truck Lines, Inc.; Ace Transportation, LLC; Dynasty Transportation, LLC; Venture Transport Logistics, L.L.C.; and Venture Transport Logistics Holdings, L.L.C.
[10] If Eagle Pipe's cause of action was against Union Pipe for breach of its lease obligations, which had terminated prior to Eagle Pipe's purchase of the property, Prados may well be controlling.
[11] Black's Law Dictionary, defines "overt" as: "Open and observable; not concealed or secret." Black's Law Dictionary 1214 (9th ed.2009).
[12] A purchaser of property cannot at the same time purchase a tort from his vendor, the damage from which tort has already been sustained, and is overt, known or reasonably knowable.
[13] Determinations of when the damage "should have been" discovered, including whether Eagle Pipe is a sophisticated purchaser such that it should have known about the risk of TENORM contamination in pipe yards, are factual matters and should be addressed by the district court at trial. See, e.g., Nelson Radiology Associates, L.L.C. v. Integrity Medical Systems, Inc., 2008-0443 (La.App. 4 Cir. 7/29/09), 16 So.3d 1197.
[1] It is quite likely that Eagle's predecessors in title and vendors, defendants (Robert Bridges, Patsy Trimble Bridges, and Edmund J. Baudoin, Jr.) did not know of the potential for NORM to be present on their property when they sold it to Eagle.
[2] I place the word "right" in quotation marks because in my view, the exception of no right of action and no cause of action merge into one in the case at bar. In my view, the issue is best decided on an exception of no cause of action or motion for summary judgment rather that on an exception of no right of action because the exception of no right of action primarily addresses whether the person asserting a claim has an interest in the outcome of the litigation. Certainly Eagle has an interest in asserting the claim.